OPINION *Page 2 
{¶ 1} Defendant-appellant, Jack Adams, appeals the judgment of the Crawford County Court of Common Pleas. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On October 11, 2004, a deputy was dispatched in reference to a male "slumped" over the steering wheel of a vehicle located at a stop sign on an exit ramp off of U.S. 30. Adams was transported to the Crawford County Sheriffs Office where Adams refused to take the breath test. On November 14, 2005, the Crawford County Grand Jury indicted Adams on one count of operating a vehicle while under the influence of alcohol or a drug of abuse, in violation of R.C. 4511.19(A)(1) and a fourth degree felony.[1]
 {¶ 3} The case was heard by a jury on August 3, 2006, and the jury subsequently found Adams guilty. Thereafter, the trial court sentenced Adams to serve three years of community control with Adams serving the first eight months in the Crawford County Jail Center with four months jail time suspended; pay a fine of $3,000; pay costs; and a five year, Class 2, driver's license suspension. The trial court also ordered Adams to successfully complete a drug/alcohol *Page 3 
treatment program during his community control and ordered that the 2004 GMC truck be forfeited to the Crawford County Sheriff's Office.
 {¶ 4} It is from this judgment that Adams appeals and asserts three assignments of error for our review. For clarity of analysis, we will combine Adams' first and third assignments of error and discuss those assignments of error first.
 ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT/APPELLANT'S MOTION FOR ACQUITTAL PURSUANT [sic] CRIMINAL RULE 29(A), BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE JURY'S VERDICT OF GUILTY AS TO THE OPEARTION OF A MOTOR [sic] VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL.
 ASSIGNMENT OF ERROR NO. III MOREOVER, THE DEFENDANT/APPELLANT'S CONVICTION FOR OPERATION OF A MOTOR [sic] VEHICLE WHILE IMPAIRED WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, EFFECTIVELY DENYING THE DEFENDANT/APPELLANT OF A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THE UNITED STATES CONSTITUTION AND OHIO CONSTITUTION.
 {¶ 5} In his first assignment of error, Adams argues that the trial court erred when it failed to grant his motion for acquittal pursuant to Crim.R. 29(A). Specifically, Adams argues the prosecution failed to establish that he operated a vehicle, and at the time of operation, that he was under the influence of alcohol. *Page 4 
Adams maintains that the new statutory definition of "operate" requires movement of the vehicle rather than simply the potential for movement. Additionally, in his third assignment of error, Adams argues that his conviction was against the manifest weight of the evidence because the jury clearly lost its way when it "determined that there was evidence presented by the State that established beyond a reasonable doubt, the defendant operated his motor vehicle while at the time of the operation, the Defendant was impaired by alcohol."
 {¶ 6} Crim R. 29(A) provides,
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction for such offense or offenses.
 {¶ 7} "Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v.Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, 9 O.O.3d 401, syllabus. This court has previously found that the Bridgeman standard "must be viewed in light of the sufficiency of evidence test * * * ."State v. Foster (Sept. 17, 1997), 3d Dist. No. 13-97-09, at *2. *Page 5 
 {¶ 8) When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio St.3d 89, 684 N.E.2d 668.
 {¶ 9} However, when determining whether a conviction is against the manifest weight of the evidence a reviewing court must examine the entire record, "`[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quotingState v. Martin (1983), 20 Ohio App. 3d 172, 175, 485 N.E.2d 717.
 {¶ 10} Adams was convicted of operating a vehicle while under the influence of alcohol or a drug of abuse, under R.C. 4511.19(A)(1), which states:
 No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply: *Page 6 
 (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.[2]
Emphasis added.
 {¶ 11} Prior to the Revised Code's definition of "operate," the meaning of the term was "exclusively a matter of judicial interpretation." State v. Wallace, 1st Dist. Nos. C-050530, C-050531,2006-Ohio-2477, at ¶ 8. In State v. Gill, the Ohio Supreme Court held that "[a] person who is in the driver's seat of a motor vehicle with the ignition key in the ignition and who, in his or her body has a prohibited concentration of alcohol, is `operating' the vehicle within the meaning of R.C. 4511.19 whether or not the engine of the vehicle is running." State v. Gill, 70 Ohio St.3d 150, 1994-Ohio-403,637 N.E.2d 897, syllabus.
 {¶ 12} However, after the Gill decision, the legislature defined the term "operate" in SB 123, effective January 1, 2004. State v.Wallace, 2006-Ohio-2477, at ¶ 8; R.C. 4511.01(HHH). The term "operate" has been amended, since it was first defined, and the applicable definition of the term includes, "[o]perate means to cause or have caused movement of a vehicle, streetcar, or trackless trolley." R.C.4511.01(HHH).
 {¶ 13} Adams argues that the prosecution failed to present evidence that he operated a vehicle and that he was under the influence at the time he operated the vehicle. However, we disagree with Adams' assertion. *Page 7 
 {¶ 14} Adams also points to R.C. 4511.194, the statute for physical control of a vehicle while under the influence, and argues that the legislature created a new offense for situations when "there was no movement or operation of the defendant's vehicle while the driver was under the influence of alcohol but was in any event in the physical control of the vehicle." Adams cites Wallace regarding the legislature's intent in enacting R.C. 4511.194.
 {¶ 15} In Wallace, the First District stated,
 The General Assembly's intent to address the situation in Gill, where the person under the influence of alcohol had the capacity to potentially move the vehicle although the engine was not running, is manifest by the fact that the General Assembly also created in R.C. 4511.194 the new offense of having physical control of a vehicle while under the influence of alcohol or with a prohibited concentration of alcohol in the blood. See Painter, Ohio Driving Under the Influence Law, 9-10, Section 1.8.
Wallace, 2006-Ohio-2477, at ¶ 14, emphasis added.
 {¶ 16} However, this case is clearly different from the situation mentioned above because the vehicle's engine was running. Accordingly, we will not address either the physical control of a vehicle while under the influence statute or the legislative intent in enacting that statute. Instead, this court will concentrate on whether there was sufficient evidence that Adams violated R.C. 4511.19, and whether Adams' conviction was against the manifest weight of the evidence. *Page 8 
 {¶ 17} In the present case, Steve Jones, a volunteer fireman for Wetstone Township, testified that he was dispatched to U.S. 30, at the 602 exit ramp. (T. 8/3/06 at 45-46). Jones testified that he pulled up at the exit ramp; noticed a black truck and a guy "slooped" over the wheel; and that Jones opened the door and "kind've startled him". (Id. at 46). Jones testified that Adams said, "`I'm okay. I needed to take a rest.' He says, `I'm good enough, I'm gonna go home now.'" (Id.) According to Jones, the vehicle was running. (Id. at 46). In addition, Jones testified that the vehicle was located "right in themiddle of the lane." (Id. at 49), emphasis added. Jones further testified that "[t]here was a strong odor of an alcoholic, uh, substance coming out of the truck and off the person, slurred speech" and that he believed Adams was under the influence of alcohol. (Id., at 48).
 {¶ 18} In addition, Deputy Jeff Windbigler, a Deputy Sheriff with the Crawford County Sheriff's Office, testified that he was assigned road duty on October 11, 2005. During the trial, Deputy Windbigler testified about his encounter with Adams:
 Q Could you — where did you come upon Mr. Adams on October 11th, 2005?
 A On the exit ramp off of the westbound lane of US 30 at 602.
 * * *
 Q Okay. When you came upon Mr. Adams could you tell the jury what you observed?
 A I observed — observed a black 2004 GMC truck, uh, sitting at the stop sign of the exit ramp on US 30 and 602. As I got out of *Page 9 my vehicle I had approached, uh, his vehicle. I spoke — or I had seen that, uh, Steve Jones was speaking with the — Mr. Adams. I had went up there and I spoke with Mr. Adams, and I'd, uh, asked him if everything — or asked him what had happened. He said, "nothing". Uhm —
 Q Did you observe or did you detect an odor of alcohol coming from his person?
 A Yes, sir. When I had spoke with him then I, uh, detected an odor of an alcoholic beverage.
 Q How would you characterize this odor as strong, as a moderate, or a light odor of alcohol?
 A I would say a moderate, I guess.
 Q Okay. Uh, when you were talking to him did he have any difficulties talking and responding back to you?
 A Yes, he had, uh — he did have slurred speech.
 Q Okay. Uh, did you notice anything unusual about his eyes?
 A Uh, bloodshot eyes.
 * * *
 Q Could you tell the jury other than the field sobriety test that you've been trained in what other clues you're trained to look for?
 A * * * you look for — detect an odor of alcoholic beverage. Q Okay.
 A Uhm, then you — you look at the other, you know, when you're speaking to `em if they have a slurred speech.
 * * *
 A Okay. I asked for the driver's license, his hand coordination was — was off and he didn't have good eye/hand coordination.
 * * *
(Id. at 64-66). Deputy Windbigler also testified that he encountered Adams in Crawford County, Ohio around 1:30 in the afternoon. (Id. at 69; 80). Further, Deputy Windbigler testified that Adams said he had one beer to drink, but that Windbigler did not ask Adams when he had consumed the beer. (Id. at 85).
 {¶ 19} Deputy Kevin Taylor, a deputy at the Crawford County Sheriff's Office, testified that he was dispatched to a vehicle with a person "slummed over *Page 10 
the wheel." (Id. at 97). Deputy Taylor testified that he arrived after Deputy Windbigler. According to Deputy Taylor, the vehicle was parked at the stop sign at the exit ramp, and the vehicle "was blocking traffic for the exit ramp." (Id. at 99). Further, Deputy Taylor testified,
 Q And, did you observe anything unusual about the defendant?
 A Uh, stumbling a little bit, uh, when I got a little closer he had bloodshot eyes. I smelled an odor of an alcoholic beverage on his person.
 Q How would you characterize this odor?
 A uh, strong odor.
(Id. at 101). Deputy Taylor also testified, "I believe that he was inebri-inebriated by some intoxicating, uh, alcohol that day." (Id. at 108). On cross, Deputy Taylor testified that he did not recall seeing any empty beer cans or bottles in the vehicle and that he did not create a report. (Id. at 113).
 {¶ 20} Cathy Smith, Adams' fiancée, testified for the defense. Smith testified that Adams was employed at General Motors in Ontario and that his regular work shift was 10:42 p.m. to 6:42 a.m. on Monday through Friday. (Id. at 130). According to Smith, Adams worked this shift on October 11th, and then went to a friend's house to help him with "some work in his pole barn." (Id. at 131). Smith, however, testified on cross that she was not with him from the time he got off of work until 1:30 in the afternoon and did not have any knowledge as to where Adams went between those hours. (Id. at 133.) *Page 11 
 {¶ 21} Circumstantial evidence and direct evidence have the same probative value. Jenks, 61 Ohio St.3d 259, at paragraph one of the syllabus; State v. Bridges, 3d Dist. No. 1-06-30, 2007-Ohio-1764, at ¶ 28, citing Jenks, supra.; State v. Mitchner, 3d Dist. No. 15-05-07,2005-Ohio-6412, at ¶ 18. "When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." Jenks, 61 Ohio St.3d, at paragraph one of the syllabus.
 {¶ 22} The evidence presented in this case includes Jones testimony that a guy was "slooped" over the steering wheel of a truck, the vehicle was located in the middle of the lane, and the vehicle was running. Jones also testified that there was a strong odor of alcohol coming out of the truck and off of the person, and Jones believed that Adams was under the influence of alcohol. In addition, Deputy Windbigler testified that he observed a 2004 GMC truck at the "stop sign of the exit ramp on US 30" and when he spoke with Adams he detected an odor of alcoholic beverages which he characterized as moderate. Deputy Windbigler also testified that Adams had slurred speech and bloodshot eyes, and Adams did not have good hand/eye coordination. Deputy Taylor testified that the vehicle was parked at a stop sign at the exit ramp and that the vehicle was blocking traffic. Further, Deputy Taylor testified that he smelled an odor of an alcoholic beverage *Page 12 
on the defendant which he characterized as strong, and stated that he believed Adams was inebriated. There was no evidence in the record to indicate that anyone else was in the vehicle.
 {¶ 23} After reviewing the evidence presented in this case, we find that there was circumstantial evidence from which the jury could make a reasonable inference of guilt. Thus, when viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could find all the essential elements of operating a vehicle while under the influence of alcohol or a drug of abuse proven beyond a reasonable doubt. Moreover, after reviewing the entire record, we are unable to find that the trier of fact clearly lost its way or created a manifest miscarriage of justice.
 {¶ 24} Adams' first and third assignments of error are, therefore, overruled.
 ASSIGNMENT OF ERROR NO. II FURTHER, THE TRIAL COURT ERRED IN DENYING THE DEFENDANT/APPELLANT'S PROPOSED JURY INSTRUCTION WHICH CONTRIBUTED TO THE CONFUSION OF THE JURY REGARDING THE ELEMENTS OF THE OFFENSE.
 {¶ 25} In this assignment of error, Adams maintains that the trial court erred in denying his proposed jury instruction of operation of a vehicle while under the influence, and the error contributed to the jury's confusion regarding the necessary elements to be proven beyond a reasonable doubt. *Page 13 
 {¶ 26} The Ohio Supreme Court has stated,
 We have previously held that "[i]t is prejudicial error to refuse a requested charge that is pertinent to the case, states the law correctly, and is not covered by the general charge." State v. Hicks (1989), 43 Ohio St.3d 72, 77, 538 N.E.2d 1030, 1037. However, the charge need not be given in the exact language requested. State v. Scott (1986), 26 Ohio St.3d 92, 101, 26 OBR 79, 87, 497 N.E.2d 55, 63.
State v. Madigral, 87 Ohio St.3d 378, 394, 2000-Ohio-448, 721 N.E.2d 52.
 {¶ 27} "When reviewing the trial court's jury instructions, we must view the instructions in their totality, if the law is clearly and fairly expressed, a reviewing court should not reverse a judgment."State v. Pope, 3d Dist. No. 13-06-05, 2006-Ohio-4318, at ¶ 11, citingMoagroff v. Cornwell Quality Tools, Inc. (1991), 81 Ohio App.3d 174,177, 610 N.E.2d 1006; Yeager v. Riverside Methodist Hosp. (1985),24 Ohio App.3d 54, 55, 493 N.E.2d 559.
 {¶ 28} Adams proposed the following jury instruction to the trial court: "[O]n or about October 11th, 2005 in Crawford County, Ohio the defendant did operate a vehicle and while — and at the time of operation was under the influence of alcohol." (T. 8/3/06, at 142). However, the trial court denied the requests. The jury instructions provided by the trial court stated, in pertinent part,
 Before you can find the defendant guilty, the State of Ohio must prove beyond a reasonable doubt that on or about October 11th, 2005 in Crawford County, Ohio the defendant did operate a motor ve — operate a vehicle, excuse me, while under the influence of al — alcohol a drug of abuse or alcohol and a drug of abuse * * *. *Page 14 
(T. 8/3/06, at 174).
 {¶ 29} The trial court did give the jury an instruction on the elements for the offense of operating a vehicle while under the influence of alcohol or a drug of abuse. Although the jury instruction given by the trial court differed from the instruction requested by the defense, the trial court was not required to give the jury instruction in the exact language requested by the defendant. See Madrigal,87 Ohio St.3d at 394.
 {¶ 30} Moreover, after reviewing the aforementioned jury instruction given by the trial court, along with the other jury instructions given by the trial court, we find that the law was clearly and fairly expressed, and thus, the trial court's judgment should not be reversed. See Pope, 2006-Ohio-4318, at ¶ 11,
 {¶ 31} citations omitted. Therefore, Adams' second assignment of error is overruled.
 {¶ 32} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
SHAW and WILLAMOWSKI, JJ., concur. r
[1] The parties stipulated that the defendant had previously been convicted of three or more violations of R.C. 4511.19(A) within six years of the offense including convictions in the Crawford County Municipal Court on November 8, 1999, April 18, 2001, and January 28, 2003. (Stipulation to Defendant's priors filed August 3,2006).
[2] The version of R.C. 4511.19 that is applicable in this case is HB 163, effective September 23, 2004. The statute has since been amended. *Page 1