The STATE of Ohio, Appellant,

v.

WALLACE, Appellee.

[Cite as *State v. Wallace,* 166 Ohio App.3d 845, 2006-Ohio-2477.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–050530 and C–050531.

Decided May 19, 2006.

846

Julia L. McNeil, Cincinnati City Solicitor, Ernest McAdams, and Gertrude Dixon, Assistant City Prosecutors, for appellant.

Louis F. Strigari, Hamilton County Public Defender, and George W. Clark, Assistant Public Defender, for appellee.

GORMAN, Presiding Judge.

{¶ 1} The state appeals from the trial court's order granting the motion of the defendant-appellee, Monica Wallace, to suppress the results of blood-alcohol and field sobriety tests, as well as statements related to the charges against her for operating a vehicle under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a), and operating a vehicle with a prohibited concentration of alcohol in her blood, in violation of R.C. 4511.19(A)(1)(b). The single issue is whether the definition of "operate" in R.C. 4511.01(HHH) may apply to an intoxicated passenger who causes the driver to lose control of the vehicle.

{¶ 2} At the hearing on the motion to suppress, Cincinnati Police Officer Charles Beebe testified that on December 11, 2004, he responded to a broadcast of a single-vehicle accident on southbound I–75. When he arrived, Wallace was being placed in an ambulance. He saw that a vehicle had hit a wall on the right side of I–75 before crossing three lanes and hitting the median on the left side. Wallace's husband admitted that he had been the driver.

{¶ 3} During the investigation, Wallace told Officer Beebe that she had been seated in the front passenger seat. Officer Beebe testified that Wallace said that while she and her husband were arguing, she "reached over * * * and grabbed the steering wheel, * * * causing [her husband] to lose control." Officer Beebe later went from the accident scene to the hospital and asked a paramedic to withdraw blood from Wallace. When he interviewed her at the hospital, Wallace told Officer Beebe that "she was drunk, and the crash was her fault." Police cited both Wallace and her husband for alcohol-related violations. Wallace was also cited for interfering with the operation of a vehicle in violation of R.C. 4511.70.

{¶ 4} The trial court accepted the undisputed facts and concluded, as a matter of law, that the police officer did not have probable cause to arrest Wallace for the offenses of operating a vehicle under the influence of alcohol and with a

prohibited concentration of alcohol in her blood because Wallace "lacked sufficient physical control of [the] vehicle from [the] passenger seat * * *." Therefore, the trial court suppressed all evidence relating to the offenses as the product of an illegal arrest. The state has now taken this interlocutory appeal as provided by Crim.R.12(K) and R.C. 2945.67(A).

{¶ 5} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8. If the trial court's judgment is supported by competent, credible evidence, an appellate court must accept the trial court's findings of fact as correct. Accepting those facts as true, the court must then independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts meet the applicable legal standard. Id.; see, also, *State v. Deters* (1998), 128 Ohio App.3d 329, 334–335, 714 N.E.2d 972.

{¶ 6} The test for establishing probable cause to arrest without a warrant is whether the facts and circumstances within an officer's knowledge were sufficient to warrant a prudent individual in believing that the defendant had committed or was committing an offense. See *State v. Deters*, 128 Ohio App.3d at 333, 714 N.E.2d 972. The resolution of the state's assignment of error depends upon whether the trial court applied the correct legal standard in concluding that Wallace did not commit an operating offense because she lacked "physical control" of the vehicle.

{¶ 7} R.C. 4511.19(A)(1) states, "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply: (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them. (b) The person has a concentration of eight-hundredths of one per cent or more but less than seventeen-hundredths of one per cent by weight per unit volume of alcohol in the person's whole blood."

{¶ 8} Until the General Assembly enacted Sub.S.B. No. 123, effective January 1, 2004, there was no statutory definition of "operate." The meaning of the term "operate" in R.C. 4511.19(A) had been exclusively a matter of judicial interpretation. In *State v. Cleary* (1986), 22 Ohio St.3d 198, 199, 22 OBR 351, 490 N.E.2d 574, the Supreme Court said, "Operation of a motor vehicle within contemplation of the statute is a broader term than mere driving and a person in the driver's position in the front seat with the ignition key in his possession indicating either his *actual or potential movement of the vehicle* while under the influence of alcohol or any drug of abuse can be found in violation of R.C. 4511.19(A)(1)." (Emphasis added.) See, also, *State v. McGlone* (1991), 59 Ohio St.3d 122, 570 N.E.2d 1115.

{¶ 9} In defining "operation," the court was troubled by those situations in which a person under the influence of alcohol was found asleep behind the steering wheel in the driver's seat of a vehicle, with the key in the ignition and the engine not running. Despite a vigorous dissent by two justices, in *State v. Gill* (1994), 70 Ohio St.3d 150, 152–153, 637 N.E.2d 897, the court held that "operating" was a broader concept than driving. The effect of *Gill* was to equate "operate" with a person's capacity for potentially moving a vehicle because of his possession of the ignition key while asleep in the driver's seat. Thus, "operate" and operability of the vehicle became fact-specific issues for the courts to determine on a case-by-case basis depending on such factors as whether the defendant (1) was seated in the driver's seat, (2) had possession of the ignition key, and (3) had the capability of starting the engine and making the vehicle move. See Painter, Ohio Driving Under the Influence Law (2006) 9–10, Section 1.8.

{¶ 10} Before the effective date of Sub.S.B. No. 123, we would have agreed with the trial court that finding a passenger in violation of R.C. 4511.19(A)(1) would be an anomaly under the Supreme Court's definition of "operate." The reported cases dealt exclusively with persons under the influence of alcohol who were seated in the driver's seat or slumped over the steering wheel.

{¶ 11} But in Sub.S.B. No. 123, the General Assembly modified the definition in *Gill* and its predecessors by specifically defining "operate," as well as by adding the words "at the time of the operation" to R.C. 4511.19(A)(1). Effective January 1, 2004, the term "operate," as used in R.C. Chapter 4511, "means to cause or have caused movement of a vehicle * * *." R.C. 4511.01(HHH).

{¶ 12} "Where the words of a statute are free of ambiguity and express plainly and distinctly the sense of the lawmaking body, the courts should look no further in their efforts to interpret the intent of the General Assembly." *State v. Smorgala* (1990), 50 Ohio St.3d 222, 223, 553 N.E.2d 672. From the plain meaning of R.C. 4511.01(HHH), there is no suggestion that the General Assembly intended to limit operating offenses to drivers. Rather, the General Assembly's expansion of the definition of "operate" to include anyone who causes movement of a vehicle is consistent with the Supreme Court's view that "[a] clear purpose of R.C. 4511.19 is to discourage persons from putting themselves in the position in which they can potentially cause the movement of a motor vehicle while intoxicated or under the influence of any drug of abuse." *State v. Gill* (1994), 70 Ohio St.3d at 154, 637 N.E.2d 897.

{¶ 13} Arguably, the definition in R.C. 4511.01(HHH) is at odds with the title of R.C. 4511.19: "*Driving* while under the influence of alcohol or drugs or with certain concentration of alcohol in bodily substances * * *." (Emphasis added.) But R.C. 1.01 states that in the construction of a statute, statutory titles or

headings are not part of the law. See *Viers v. Dunlap* (1982), 1 Ohio St.3d 173, 175, 1 OBR 203, 438 N.E.2d 881.

{¶ 14} The General Assembly's intent to address the situation in *Gill*, where the person under the influence of alcohol had the capacity to potentially move the vehicle although the engine was not running, is manifest by the fact that the General Assembly also created in R.C. 4511.194 the new offense of having physical control of a vehicle while under the influence of alcohol or with a prohibited concentration of alcohol in the blood. See Painter, Ohio Driving Under the Influence Law 9–10, Section 1.8. The plain meaning of R.C. 4511.01(HHH) does not limit the state to a single prosecution for each alcohol-related accident but permits two or more impaired occupants to be "operating" the same vehicle, at the same time, when their combined actions caused movement of the vehicle.

{¶ 15} Under the undisputed facts, Wallace's conduct caused movement of the vehicle and the driver's loss of control when she grabbed the steering wheel and caused the vehicle to crash. Accordingly, her conduct fit within the unambiguous statutory definition of "operate" in R.C. 4511.01(HHH). Because a prudent individual would have believed that Wallace had committed an offense by causing movement of a vehicle while intoxicated, Officer Beebe had probable cause to arrest Wallace. The assignment of error is sustained.

{¶ 16} The judgments of the trial court are reversed, and this cause is remanded for trial or further proceedings consistent with the law and this opinion.

Judgments reversed
and cause remanded.

SUNDERMANN, J., concurs.

PAINTER, J., concurs separately.

PAINTER, Judge, concurring separately.

{¶ 17} I concur. The definition of "operate" in R.C. 4511.01(HHH) *[this is not a typo]* is to "cause or have caused movement." A drunk passenger who grabs the wheel and steers the car into a wall has caused movement and is operating the vehicle, as is the driver.