CITY OF COLUMBUS, Appellee,

v.

FREEMAN, Appellant.

[Cite as *Columbus v. Freeman,* 181 Ohio App.3d 320, 2009-Ohio-1046.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–519.

Decided March 10, 2009.

Richard C. Pfeiffer, Columbus City Attorney, Lara N. Baker, Chief Prosecuting Attorney, Melanie R. Tobias, Prosecuting Attorney, and Orly Ahroni, Assistant Prosecuting Attorney, for appellee.

Yeura R. Venters, Franklin County Public Defender, and John W. Keeling, Staff Attorney, for appellant.

McGRATH, Judge.

{¶ 1} Defendant-appellant, Nicholas E. Freeman, appeals from the judgment of the Franklin County Municipal Court, which, after a jury trial, convicted him of operating a motor vehicle while under suspension, a first-degree misdemeanor in violation of Columbus City Codes ("C.C.") 2141.16(A), and reckless operation, a fourth-degree misdemeanor in violation of C.C. 2133.02(B).

{¶ 2} According to appellant's former girlfriend, Shana Vanderpool, on August 4, 2007, she and appellant left a party at approximately 7:30 p.m. Vanderpool was driving, and appellant was in the front passenger's seat. Appellant wanted to drive, but Vanderpool refused, and an argument between the two ensued. At one point, while insulting Vanderpool, appellant grabbed Vanderpool's face to make her look at him. Vanderpool testified that she told appellant if he did not stop yelling and arguing, they might get into a wreck. At this time, appellant grabbed the steering wheel and turned it toward the right. Vanderpool tried to steer back to the left but lost control of the vehicle. The vehicle hit a guardrail, then a light post and street sign, before coming to rest nose-end in a ditch.

{¶ 3} Columbus Police Officer Cynthia Shaw was off duty that night and traveling several hundred yards behind Vanderpool's car. Officer Shaw saw the vehicle veer off the roadway and stopped to see whether anyone needed assistance. When Officer Shaw arrived at the car, appellant was out of the car, and Vanderpool was sitting with her legs out of the car.

{¶ 4} Columbus Police Officer Robert Altherr responded to the scene. After talking with Vanderpool, Officer Altherr cited appellant for a number of traffic

violations under the Columbus City Codes. Two of these charges were submitted to a jury, and, as noted above, the jury found appellant guilty of operating a motor vehicle while under suspension and reckless operation.

{¶ 5} Appellant was sentenced to 180 days on the driving-under-suspension charge and 30 days on the reckless-operation charge. The trial court also imposed a $100 fine, plus court costs, and suspended appellant's driving privileges for one year.

{¶ 6} This appeal followed, and appellant brings one assignment of error for our review:

> The trial court, over objection, improperly instructed the jury that it could find that the defendant operated the vehicle, even if he was a passenger and not the driver, if they found that the defendant grabbed the steering wheel. This in effect, constituted a directed verdict on the element of operation and relieved the jury from making a factual finding on this issue. It also was an improper comment by the court upon the facts.

{¶ 7} Under this assigned error, appellant first asserts that his alleged conduct did not constitute "operation" of a vehicle as defined by law. Appellant was convicted of driving under financial-responsibility-law suspension or cancellation, in violation of C.C. 2141.16, which states as follows:

> (A) No person, whose driver's or commercial driver's license * * * has been suspended or canceled pursuant to Chapter 4509 of the Ohio Revised Code, shall operate any motor vehicle within the city, during the period of the suspension or cancellation, except as specifically authorized by Chapter 4509 of the Ohio Revised Code.

{¶ 8} Appellant was also convicted of reckless operation of a vehicle in violation of C.C. 2133.02, which states as follows:

> (b) No person shall operate a vehicle on any street, highway, or on any public or private property other than streets or highways, in willful or wanton disregard of the safety of persons or property.

{¶ 9} As defined in C.C. 2101.201, " '[o]perate' means to cause or have caused movement of a vehicle." The definition of "operate" contained in C.C. 2101.201 is identical to that used in R.C. 4511.01(HHH).

{¶ 10} Because he was not sitting in the driver's seat and did not operate the accelerator or the brake, appellant contends that by law he did not operate the vehicle. It is appellant's position that while his alleged conduct, i.e., grabbing the steering wheel, would constitute controlling or changing the direction of the vehicle, it would not constitute operating or moving the vehicle.

{¶ 11} Prior to the enactment of S.B. 123, effective January 1, 2004, there was no statutory definition of "operate." Thus, the meaning of the word "operate" as used in R.C. 4511.19(A) had been exclusively a matter of judicial interpretation. See *State v. Wallace*, 166 Ohio App.3d 845, 2006-Ohio-2477, 853 N.E.2d 704; *State v. Schultz*, Cuyahoga App. No. 90412, 2008-Ohio-4448, 2008 WL 4078447. In 1986, the Supreme Court of Ohio stated that "[o]peration of a motor vehicle within contemplation of the statute is a broader term than mere driving and a person in the driver's position in the front seat with the ignition key in his possession indicating either his actual or potential movement of the vehicle while under the influence of alcohol or any drug of abuse can be found in violation of R.C. 4511.19(A)(1)." *State v. Cleary* (1986), 22 Ohio St.3d 198, 199, 22 OBR 351, 490 N.E.2d 574. Thereafter, the Supreme Court expanded the definition of "operate" to include scenarios in which the defendant was in the driver's seat, the keys were in the ignition, but the engine was not running. *State v. Gill* (1994), 70 Ohio St.3d 150, 637 N.E.2d 897.

{¶ 12} With the enactment of S.B. 123, effective January 1, 2004, the General Assembly specifically defined "operate" as used in R.C. Chapter 4511 to mean "to cause or have caused movement of a vehicle." R.C. 4511.01(HHH).

■ {¶ 13} "Where the words of a statute are free of ambiguity and express plainly and distinctly the sense of the lawmaking body, the courts should look no further in their efforts to interpret the intent of the General Assembly." *State v. Smorgala* (1990), 50 Ohio St.3d 222, 223, 553 N.E.2d 672.

{¶ 14} At this time, we are aware of only one other Ohio Appellate District, the First Appellate District, that has considered the definition of "operate" contained in R.C. 4511.01(HHH), as it relates to the actions of a passenger in the vehicle. See *State v. Wallace*, 166 Ohio App.3d 845, 2006-Ohio-2477, 853 N.E.2d 704. In *Wallace*, the defendant's husband was driving the car, and the couple began arguing. The defendant reached over, grabbed the steering wheel, and caused her husband to lose control of the car. The defendant told the investigating officer that she had been drinking, and the defendant was charged with operating a vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and operating a vehicle with a prohibited concentration of alcohol in her blood in violation of R.C. 4511.19(A)(1)(b). The First District framed the issue as whether the definition of "operate" in R.C. 4511.01(HHH) may apply to an intoxicated passenger who caused the driver to lose control of the vehicle.

{¶ 15} In answering this question in the affirmative, the *Wallace* court stated, "The plain meaning of R.C. 4511.01(HHH) does not limit the state to a single prosecution for each alcohol-related accident but permits two or more impaired occupants to be 'operating' the same vehicle, at the same time, when their combined actions caused movement of the vehicle." Id. at ¶ 14. The court went

on to state, "Under the undisputed facts, Wallace's conduct caused movement of the vehicle and the driver's loss of control when she grabbed the steering wheel and caused the vehicle to crash. Accordingly, her conduct fit within the unambiguous statutory definition of 'operate' in R.C. 4511.01(HHH)." Id. at ¶ 15. In his concurring opinion, Judge Painter wrote only that "[t]he definition of 'operate' in R.C. 4511.01(HHH) * * * is to 'cause or have caused movement.' A drunk passenger who grabs the wheel and steers the car into a wall has caused movement and is operating the vehicle, as is the driver." Id. at ¶ 17.

{¶ 16} The Eighth Appellate District has tacitly adopted *Wallace*'s holding in *Schultz*, 2008-Ohio-4448, 2008 WL 4078447. The issue in *Schultz* was whether there was sufficient evidence to support an enhanced OVI conviction. However, the *Schultz* court noted the General Assembly's amendments to Ohio's OVI statute and narrowing of the definition of "operate" to require that the person cause movement of the vehicle. Id. at ¶ 30. In footnote 6, the court stated the following: "The term 'operate' is still broad enough to encompass an impaired passenger who grabs the steering wheel of a moving vehicle. See, *Wallace*, supra. But an impaired passenger cannot be convicted of a physical control violation because he is not in the driver's seat. See R.C. 4511.19(A)(2)."

{¶ 17} We agree with the reasoning and analysis of the First Appellate District in *Wallace*, 166 Ohio App.3d 845, 2006-Ohio-2477, 853 N.E.2d 704. The statutory definition of "operate" in R.C. 4511.01(HHH), which is identical to the definition of "operate" in C.C. 2101.201, is unambiguous and broad enough to encompass appellant's actions. From the word's plain meaning, "operate" means to cause movement of a vehicle, and it is not limited to drivers. Certainly, this definition can encompass a person in the vehicle whose conduct causes movement of the vehicle by grabbing the steering wheel.

{¶ 18} Appellant next argues that if *Wallace* is correct in its holding, and the meaning of the word "operate" is plain and unambiguous, then there is no reason for the court to have explained the definition of "operate" to the jury.

{¶ 19} The instruction given to the jury and that which appellant now challenges is as follows:

The term operate means to cause or have caused the movement of a vehicle. The term operate is not limited only to a driver, but rather it applies to anyone who causes movement of a vehicle in any direction. If you find beyond a reasonable doubt that [appellant] caused vehicle movement by grabbing the steering wheel, then you may find that [appellant] operated the vehicle.

{¶ 20} According to appellant, this definition of "operate" went "far beyond the statutory version" and effectively directed a verdict against appellant on the element of operation. Appellant further argues that appellee improperly had the

trial court comment upon a fact in the case and then instruct the jury that this constituted operating. Thus, it is appellant's position that this jury instruction was improper because it relieved the jurors of their fact-finding obligation, effectively directed a verdict against him, and thereby denied him his right to a jury trial. We disagree.

{¶ 21} A determination as to which jury instructions are proper is a matter left to the sound discretion of the trial court. *State v. Guster* (1981), 66 Ohio St.2d 266, 271, 20 O.O.3d 249, 421 N.E.2d 157. Crim.R. 30(A) requires a trial court to fully and completely give the jury all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as a fact-finder. *State v. Covington*, Franklin App. No. 06AP–826, 2007-Ohio-5008, 2007 WL 2773680, ¶ 3, citing *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640. Further, a party is entitled to the inclusion of its requested instruction only if it is a correct statement of the law applicable to the facts of the case. *Covington* at ¶ 8, citing *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 575 N.E.2d 828. "Jury instructions are proper if they correctly state the law as applied to the facts of the case, and if reasonable minds can properly reach the conclusion sought by the instructions." *Id.*

{¶ 22} With respect to a defendant's constitutional rights, " 'whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction.' " *State v. Evans* (Dec. 27, 2001), Franklin App. No. 01AP–594, 2001 WL 1653864, quoting *Sandstrom v. Montana* (1979), 442 U.S. 510, 514, 99 S.Ct. 2450, 61 L.Ed.2d 39. In *Sandstrom*, the jury instruction stated, " '[T]he law presumes that a person intends the ordinary consequences of his voluntary acts.' " *Id.* at 513, 99 S.Ct. 2450, 61 L.Ed.2d 39. This instruction was deemed unconstitutional because a jury may have interpreted the instruction as constituting either a burden-shifting presumption or a conclusive presumption.

{¶ 23} In contrast, in *State v. Getsy* (1998), 84 Ohio St.3d 180, 702 N.E.2d 866, the Supreme Court of Ohio considered a trial court's jury instruction that "[i]f a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life the purpose to kill may be inferred from the use of the weapon." *Id.* at 196, 702 N.E.2d 866. The defendant argued that this instruction created a mandatory presumption in violation of the Ohio and United States Constitutions. The Supreme Court of Ohio determined that the use of "may" in the instruction indicated that the presumption was permissive, not one the jury was required to accept, and, therefore, did not run afoul of the defendant's constitutional rights.

{¶ 24} Likewise, the trial court here used "may" in its jury instruction, and pursuant to *Getsy*, the jury instruction given did not on its face create an

impermissible presumption. Therefore, the jury instruction in this case may not reasonably be interpreted as creating a mandatory presumption. *Evans,* 2001 WL 1653864 (jury instruction stating that purpose to cause death may be inferred from use of the weapon along with all other facts and circumstances in evidence did not create a mandatory presumption). Moreover, the instruction here contained a correct statement of law as applicable to the facts of the case, and we are, therefore, unable to find prejudicial error. *State v. Sargent* (1975), 41 Ohio St.2d 85, 70 O.O.2d 169, 322 N.E.2d 634. Accordingly, we do not find appellant's position well taken.

{¶ 25} For the foregoing reasons, appellant's single assignment of error is overruled, and the judgment of the Franklin County Municipal Court is hereby affirmed.

Judgment affirmed.

FRENCH, P.J., concurs.

TYACK, J., dissents.

TYACK, Judge, dissenting.

{¶ 26} I respectfully dissent.

{¶ 27} The issue before us is not whether a jury verdict was against the manifest weight of the evidence. The issue is whether the trial court judge made a mistake by taking the word "operate," which is defined by statute, and amplifying the definition in a way that made it seem much more likely that the defendant would be found guilty. I believe the trial court should simply have given the statutory definition of "operate" and then let the jury decide whether or not causing a vehicle to swerve is the same as causing a vehicle to move. The trial judge, in his charge, decided that key issue for the jury, thereby invading the province of the jury.

{¶ 28} The majority opinion sanctions a revised definition of "operate" that leads to some clearly absurd results. A pedestrian who steps in front of a moving vehicle and forces the driver to swerve to miss him or her could be someone who "operated" the vehicle. Apparently, the pedestrian, if under the influence, would be guilty of OVI for having "operated" the vehicle. If the pedestrian had no operator's license, the pedestrian would be guilty of operating a motor vehicle without a valid license.

{¶ 29} The jury charge sanctioned by the majority in this case allows operation by a person not inside the motor vehicle and not touching the motor vehicle. I do not believe that is what the legislature intended when it defined "operate." What the legislature intended was to correct the absurd definition of operation created

by case law in which a person who was doing the right thing by sleeping off his or her intoxication was to be found guilty of operating a motor vehicle.

{¶ 30} The courts really should not be expanding statutory definitions to encourage juries to reach verdicts that individual trial judges would like to see in a given case. Instead, the courts should be trusting juries to reach the correct verdict in a given case. We have a constitutional right to a trial by jury for a reason. The framers of our constitutions wanted important decisions about a person's guilt or innocence to be made by average citizens, not persons drawing a government paycheck. We should respect that right.

{¶ 31} Again, I respectfully dissent.