The STATE of Ohio, Appellee,

v.

LINDSEY, Appellant.

[Cite as *State v. Lindsey,* 190 Ohio App.3d 595, 2010-Ohio-5859.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–773.

Decided Dec. 2, 2010.

596

Ron O'Brien, Franklin County Prosecuting Attorney, and Barbara A. Farnbacher, Assistant Prosecuting Attorney, for appellee.

Brehm & Associates and Eric W. Brehm, for appellant.

CONNOR, Judge.

{¶ 1} Defendant-appellant, Syrita Lindsey, appeals from a judgment of the Franklin County Court of Common Pleas, entered upon a jury verdict convicting her of four counts of vehicular assault. For the following reasons, we affirm that judgment.

{¶ 2} On April 18, 2007, at approximately 8:00 p.m., appellant was involved in a serious automobile accident on Waggoner Road in Franklin County, Ohio, in which her Lexus RX300 SUV crashed head-on into a red Chevrolet Silverado pickup truck driven by Christopher Johnson. Johnson and his three young grandsons, ages three, six, and 11, sustained numerous injuries. Johnson was flown by life-flight to Grant Medical Center. His three grandsons were transported to Children's Hospital and treated for multiple lacerations and fractures. Appellant was also injured and was transported to the hospital for treatment.

{¶ 3} On March 24, 2008, appellant was indicted by the Franklin County Grand Jury on four counts of aggravated vehicular assault, four counts of vehicular assault, and one count of operating a vehicle under the influence of alcohol or drugs.

{¶ 4} The matter proceeded to trial on April 13, 2009. However, prior to impaneling the jury, a hearing was held that on the issue of appellant's refusal to submit to a blood-alcohol test. Following the hearing, the trial court held that the state could not introduce evidence of appellant's refusal to submit to a chemical test and therefore, the court would not instruct the jurors regarding the refusal. The court reached this determination because the state could not produce the appropriate form demonstrating appellant's refusal.

{¶ 5} During trial, the state introduced the testimony of several witnesses, including that of Johnson, three firefighters and/or paramedics, and two police officers, as well as the testimony of appellant's cousin, Taneka Hamilton.

{¶ 6} Johnson testified that he was heading home after picking up some propane for grilling at the Meijer gas station at Broad Street and Waggoner Road when the accident occurred. Johnson saw appellant's vehicle come around a bend in the road going downhill and speeding out of control. He immediately

knew that appellant was going to hit him. Johnson testified that appellant's vehicle did not come just left of center. Rather, appellant's vehicle came all the way across the center line and straight into his lane, which was the wrong lane of travel for appellant. Appellant struck him head-on, despite the fact that he was nearly stopped and against the guardrail, as far off the road as he could be, due to the narrow berm in that area. Johnson testified that appellant appeared to have lost control when she came around the slight curve.

{¶ 7} Johnson testified that although he had less than a second to observe appellant's vehicle before reacting, he believed that she was speeding. He estimated the posted speed limit in that area to be 45 mph. When asked how he concluded that appellant was speeding, Johnson stated: "From that—that's why I say it was such a quick amount of time. I mean, it was just—she was—there was no car, then all of a sudden like around that bend just, you know, I couldn't tell you how fast she was going but it was very fast." In addition, Johnson identified numerous photographs of the area where the accident occurred. These photographs were labeled State's exhibit Nos. S–1 through S–14.

{¶ 8} Johnson also testified to the injuries he sustained as a result of the accident, which, among other injuries, included a shattered hip and a broken leg, both of which required surgery. While at the hospital, Johnson developed pneumonia and was on life support for approximately two months. At the time of the trial, he had undergone 49 surgeries related to his injuries and could no longer work.

{¶ 9} Hamilton testified that she and appellant are first cousins. On the day of the accident, she arrived at appellant's house around noon to braid appellant's hair. Hamilton and appellant opened a bottle of wine, which they shared. Each of them had a couple of glasses of wine. Hamilton also cooked steaks for dinner. Hamilton testified that appellant did not appear to be affected by the alcohol and was not visibly impaired.

{¶ 10} After braiding appellant's hair, Hamilton and appellant got into their respective vehicles to drive to the ATM at the Meijer at Broad Street and Waggoner Road, which was just a short distance away, so that appellant could pay Hamilton for her services. Appellant pulled off first and Hamilton followed her, but there was a car in between them on Waggoner Road. Hamilton was able to see appellant's vehicle until appellant drove down the slope, at which time she lost sight of appellant's SUV. As Hamilton descended the slope, she saw that an accident had occurred. Hamilton immediately put her own car in park and raced to appellant's vehicle, which was smoking. Fearing that the vehicle might explode, Hamilton pulled appellant from the passenger side of the vehicle and took appellant back to her own car for a while. Although appellant asked Hamilton to take the blame for the accident, Hamilton chose not to do so.

{¶ 11} Hamilton also testified that she did not see the crash, but speculated that appellant may have struck a pothole in that area, although she admitted that she really did not know what happened. However, Hamilton testified that she did not see appellant driving erratically.

{¶ 12} Columbus firefighter and paramedic Phillip Biggs testified that he provided treatment to Johnson and to appellant at the scene of the accident. Biggs testified that he encountered appellant after he had been on the scene for approximately 30 minutes. She was evaluated, given an IV, and then transported to Grant Medical Center. While treating appellant, Biggs wondered if appellant had been drinking, but he did not notice any signs of intoxication or of a head injury. He did observe that appellant was bleeding and had glass in her hair.

{¶ 13} Volunteer firefighter Russell Thomas, who assisted Biggs, also testified that he did not notice an odor of alcohol about appellant's person. However, Thomas testified that appellant was very agitated and somewhat incoherent, asking numerous times about the other individuals involved in the accident. Thomas testified that appellant repeatedly kept saying, "How bad did I f*** those people up[?]" and "I can't believe I f***ed those people up." Thomas also testified that the air bags had been deployed in the two vehicles he observed and both vehicles had been severely damaged.

{¶ 14} Officer Michelle Perry testified that she was the first responding police officer on the scene. She observed Johnson's red pickup truck off to the right of the roadway facing north on Waggoner Road and appellant's gold Lexus SUV in the middle of the roadway facing south on Waggoner Road. Officer Perry initially spoke with Hamilton, who was thought to be the driver of one of the involved vehicles. However, after speaking with Hamilton, Officer Perry determined that Hamilton was not one of the drivers involved in the crash. Officer Perry next spoke with appellant, who was seated in the passenger seat of the Lexus SUV. Appellant had severe lacerations to her face. Upon asking appellant what had happened, appellant told Officer Perry, "I don't know. I wasn't driving." She further advised Officer Perry that she had been in the passenger seat and did not see anything.

{¶ 15} Officer Perry asked appellant several times if she needed medical attention. Although appellant initially declined, she eventually requested to be checked by the medics. While escorting her over to the medics, Officer Perry noticed that appellant's balance was very unsteady. Officer Perry also testified that appellant's words were extremely slurred and she seemed dazed or "out of it." Officer Perry eventually cited appellant for going left of center and failing to maintain a single lane.

{¶ 16} Officer Aaron Green testified that he made contact with Officer Perry on the night of the accident. He was instructed to take custody of appellant, but

as he attempted to place her in his cruiser, she requested medical treatment. As a result, he escorted her to the ambulance. During his contact with appellant, Officer Green noticed an odor of alcohol about appellant's person. After appellant was transported to Grant Medical Center, Officer Green had additional contact with appellant. Upon inquiry from Officer Green as to whether she had been drinking, appellant replied that she had been drinking, but because she had not been driving, it did not matter.

{¶ 17} Prior to resting its case, the state and counsel for appellant entered into several stipulations. Among those were the admission of numerous photographs depicting Johnson's damaged vehicle, appellant's damaged vehicle, injuries to Johnson's three grandchildren, and medical records for Johnson and his grandchildren. Counsel for appellant did not introduce any witnesses or testimony.

{¶ 18} On April 22, 2009, the jury returned guilty verdicts as to all four counts of vehicular assault,[1] but was unable to reach a unanimous verdict as to the four counts of aggravated vehicular assault and the single count of operating a vehicle under the influence of alcohol or drugs.[2] Appellant was sentenced to a three-year period of incarceration, which was suspended for a period of community control, and which also included 31 days in the county jail and a five-year driver's license suspension. Appellant has filed an appeal and now submits the following three assignments of error for our review:

1. The trial court did err by incorrectly defining the term "operation" in the jury instructions.

2. The trial court did err when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.

3. Defendant was denied the effective assistance of counsel.

{¶ 19} In her first assignment of error, appellant submits that the trial court erred by providing the jury with an inaccurate and improper jury instruction regarding the definition of "operate" as it relates to the offense of vehicular assault.

{¶ 20} While charging the jury, the trial court gave the following instruction:

The term operate is a broader term than driving. It includes not only a person being in control of a vehicle while it is in motion, but also a person, whether conscious or unconscious, in the driver's location in the front seat of a stationary vehicle so as to be capable of doing any act or series of acts which

---

1. The verdict forms were dated April 22, 2009, but were not filed with the clerk of courts until April 30, 2009.

2. In a subsequent trial, appellant was found not guilty on those five counts.

could cause or contribute to the vehicle being put in motion. It is not necessary to prove that the person in the driver's location of a stationary vehicle ever had the vehicle in motion or intended to put the vehicle in motion.

{¶ 21} Appellant submits that this is an inaccurate statement of the current law in Ohio and submits that the current definition of "operation" is found in R.C. 4511.01(HHH). That statute defines "operate" as "to cause or have caused movement of a vehicle."

{¶ 22} Ohio Jury Instructions ("OJI") Section 503.08, which provides instructions for the offenses of aggravated vehicular assault and vehicular assault, was recently revised. Currently, for offenses committed on or after June 1, 2004, Section 503.08(2) states: " 'Operate' means to cause or have caused movement." The instruction defining "operate" as provided by the trial court is an instruction that developed as a result of judicial interpretation, prior to the time when there was a statutory definition of "operate." The statutory definition became effective January 1, 2004, with the enactment of S.B. No. 123. See *Columbus v. Freeman*, 181 Ohio App.3d 320, 2009-Ohio-1046, 908 N.E.2d 1026, ¶ 11–12.

{¶ 23} Appellant asserts that the trial court improperly defined the term "operate," that this error interfered with the jury's factfinding duties, and that therefore her convictions should be reversed. However, Crim.R. 30(A) states as follows:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. * * * The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. * * *

On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

{¶ 24} Here, appellant's trial counsel did not object to the jury instruction provided by the court. Although appellant claims that her counsel was not given the opportunity to object, we find that the record demonstrates otherwise. Thus, we review the issue under the plain-error standard. See *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (because defendant challenged the jury instruction in the court of appeals but failed to object to it at trial, he forfeited all but plain error).

{¶ 25} Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We notice plain error " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Barnes* at 27, 759 N.E.2d 1240, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. "By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." Id. Under the plain-error standard,

[f]irst, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.

Id.

{¶ 26} Therefore, plain error is not present unless, but for the error complained of, the outcome of the trial would have been different. *Long* at paragraph two of the syllabus; *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 78. In the instant case, we do not find that the outcome of the trial would have been different if the trial court had given the jury an instruction defining "operate" as "to cause or have caused movement."

{¶ 27} The jury instruction given here provided a broad definition of the term "operation" and included conduct beyond merely driving. For example, under the judicially constructed definition of "operate," conduct such as sleeping in the driver's seat of a stationary, parked vehicle with the keys in the ignition or readily available in hand could constitute "operation" of the vehicle. See *State v. Riley* (Jan. 20, 1994), 10th Dist. No. 93AP–518, 1994 WL 14782. On the other hand, the statutory definition of "operate" is narrower and may not cover such conduct.[3] However, the broader type of conduct provided for under the judicially created definition is not at issue in the present case. Significantly, driving is clearly covered under both the judicially created and the statutorily created definitions of "operate."

{¶ 28} Here, there is significant testimony indicating that appellant was the driver of the at-fault vehicle and that she operated the vehicle. Hamilton testified that she witnessed appellant driving her gold Lexus SUV just moments

---

**3.** Nevertheless, although the statutory definition is arguably more narrow, "operate," as defined in R.C. 4511.01(HHH), has been found by this court to include the conduct of a passenger who grabs the steering wheel while another is driving and causes an accident. See *Freeman,* 181 Ohio App.3d 320, 2009-Ohio-1046, 908 N.E.2d 1026, at ¶ 16.

before the accident. Hamilton also testified that she pulled appellant from the vehicle because it was smoking and she feared it might explode. When asked, Hamilton indicated that she did not open appellant's car door "on her side," but instead had to "go around the other side" to remove appellant from the passenger side door. There was no testimony that anyone else was inside appellant's vehicle immediately before or after the crash. In addition, appellant also had obvious, severe facial lacerations and glass in her hair, which is consistent with having been in an automobile accident.

{¶ 29} The state's theory of the case was that appellant had actually been driving or "operating" the vehicle that caused the crash. Admittedly, there was testimony that appellant had stated to police that she was not the driver of the vehicle. Yet this is contradicted by appellant's statements to the volunteer firefighter who treated her (Thomas), as she repeatedly asked about the condition of the others involved in the accident and said, "How bad did I f*** those people up[?]" and "I can't believe I f***ed those people up."

{¶ 30} Significantly, none of the testimony indicated that appellant's alleged conduct consisted of anything other than actually driving or causing movement of the vehicle. Stated another way, the state's presentation of the evidence asked the jury to decide one question regarding operation: was she or was she not the driver of the at-fault vehicle? There was never any testimony to support an inference that appellant may have committed other conduct, such as sitting in a parked or stationary vehicle with the keys in hand with the potential to cause movement, and thus, there was no evidence that appellant "operated" the vehicle in a manner other than by actually driving the vehicle and causing movement. Therefore, the fact that the definition of "operate" that was provided to the jury also included language from the broader, judicially created definition was not prejudicial to appellant, as that broader language was clearly never applicable under the facts and circumstances of this case, and it did not prejudice appellant.

{¶ 31} As a result, we find that assuming the provided jury instructions were in error, appellant has failed to demonstrate plain error because the error did not affect the outcome of the trial. Furthermore, appellant was not prejudiced by any such error and a manifest miscarriage of justice did not occur here.

{¶ 32} Accordingly, we overrule appellant's first assignment of error.

{¶ 33} In the second assignment of error, appellant argues that the evidence submitted is insufficient to prove that she acted recklessly with respect to her four vehicular-assault convictions because the only evidence offered to prove this element was the testimony of the victim, Christopher Johnson. Appellant points out that the state did not introduce the testimony of an accident reconstructionist to reconstruct how the accident occurred or how fast appellant was driving.

Appellant also argues that her convictions are against the manifest weight of the evidence for the same reasons.

{¶ 34} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. We examine the evidence in the light most favorable to the state and determine whether any rational trier of fact could have found that the state proved, beyond a reasonable doubt, all of the essential elements of the crime. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 78; *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27.

{¶ 35} In determining whether a conviction is based on sufficient evidence, an appellate court does not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. See *Jenks,* paragraph two of the syllabus; *Thompkins* at 390, 678 N.E.2d 541 (Cook, J., concurring); *Yarbrough* at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency-of-the-evidence claim). We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact. *State v. Treesh* (2001), 90 Ohio St.3d 460, 484, 739 N.E.2d 749; *Jenks* at 273, 574 N.E.2d 492. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Thompkins* at 386, 678 N.E.2d 541.

{¶ 36} While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest-weight-of-the-evidence standard addresses the evidence's effect of inducing belief. *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 25, citing *Thompkins* at 386, 678 N.E.2d 541. Under the manifest-weight standard, a reviewing court must ask the following question: Whose evidence is more persuasive—the state's or the defendant's? Id. at ¶ 25. Although there may be legally sufficient evidence to support a judgment, it may nevertheless be against the manifest weight of the evidence. *Thompkins* at 387, 678 N.E.2d 541; see also *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148 (even when there is sufficient evidence to sustain a guilty verdict, a court of appeals has the authority to determine that such a verdict is against the weight of the evidence); *State v. Johnson* (2000), 88 Ohio St.3d 95, 723 N.E.2d 1054.

{¶ 37} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of

the conflicting testimony." *Wilson* at ¶ 25, quoting *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541. In determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving any conflicts in the evidence, the jury clearly lost its way and thereby created such a manifest miscarriage of justice that the conviction must be reversed and a new trial must be ordered. *Thompkins* at 387, 678 N.E.2d 541, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 38} A conviction should be reversed on manifest-weight grounds only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, 678 N.E.2d 541, quoting *Martin* at 175, 485 N.E.2d 717. Moreover, " 'it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.' " *State v. Brown,* 10th Dist. No. 02AP–11, 2002-Ohio-5345, 2002 WL 31194302, ¶ 10, quoting *State v. Long* (Feb. 6, 1997), 10th Dist. No. 96APA04–511, 1997 WL 52911.

{¶ 39} R.C. 2901.22(C) provides the definition of "recklessly." It states as follows:

A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

{¶ 40} In reviewing the sufficiency of the evidence, we must consider the evidence in the record and view it in the light most favorable to the prosecution. See *Jenks.* In the instant case, there was testimony that appellant was speeding, that she was driving on the wrong side of the road, that her car was out of control, and that she had been drinking.

{¶ 41} Johnson testified that appellant was speeding. While he was unable to specifically state how fast she was going, he described her vehicle as traveling "very fast." He further testified that initially there was no vehicle in view, and then all of a sudden, she appeared "out of the blue" and was speeding out-of-control before she crashed into his truck. This supports his testimony that she was moving at a high rate of speed.

{¶ 42} In addition to testimony regarding appellant's speed, Johnson also provided testimony that appellant's car was out of control and that she was driving on the wrong side of the road. Johnson testified as follows:

We just turned out onto the road and maybe went, I don't know, 150 yards or something. Then a car apparently speeding lost control. And I got over as far as I could off the road next to the guardrail and was actually stopped. But the car just got—I mean, it just like, just came straight across and hit us.

　　* * *

　　* * * [I]t didn't come just left of center. It came all the way in the wrong lane. I went over as far as I could against the guardrail but there wasn't any other place I could move.

{¶ 43} Moreover, Officer Perry testified that she believed appellant to be the at-fault driver and issued appellant a traffic citation for going left of center and failing to maintain a single lane.[4]

{¶ 44} In addition to this testimony, the parties stipulated to the admission of a series of photographs depicting the area where the accident occurred. The photographs were taken approximately one year after the accident and were identified by Johnson. Along with Johnson's testimony that appellant was traveling on a slight decline and around a slight curve, the photographs also depict this. Furthermore, several photographs depict a yellow warning sign posted on Waggoner Road near the intersection of Waggoner Road and Crawford Farms Drive. The sign alerted drivers to an approaching curve to the right and then to the left and stated an advisory speed of 35 m.p.h. Given testimony from Hamilton that the scene of the accident was close to appellant's home, the jury could also draw the conclusion that appellant was most likely very familiar with the area.

{¶ 45} Finally, the record contains evidence that appellant had consumed alcohol on the day of the crash. Appellant's cousin, Hamilton, testified that she and appellant had shared a bottle of wine earlier. One officer testified that he noticed an odor of alcohol on appellant. Another officer testified appellant had slurred speech and seemed unsteady and dazed. Appellant herself admitted at the hospital that she had been drinking.

{¶ 46} The conclusion that a driver's operation of a motor vehicle was reckless is reached by examining both the driving at issue and all of the circumstances under which it took place. *State v. Hartman* (1987), 41 Ohio App.3d 142, 144, 534 N.E.2d 933. Paramount among these is the threat that the driver's operation

---

4. A copy of the traffic citation, introduced as "Defendant's Exhibit 1," indicates that appellant was cited for failure to drive upon the right side of the roadway, pursuant to Columbus City Code 2131.01.

poses to others. Id. Based upon the foregoing, we believe that sufficient evidence exists to support the jury's conclusion that appellant was reckless in her driving.

{¶ 47} Here, in construing the evidence of speed in a light most favorable to the prosecution, we find there is evidence that appellant was traveling at a high rate of speed as she came around the curve in the left-hand lane and collided head-on with Johnson's truck. Appellant negotiated the slope and/or the curve with a perverse disregard for the risk that a car could be (and in fact was) coming from the opposite direction and that she could (and did) cause an accident. Furthermore, excessive speed can rise to the level of recklessness, given the particular facts of the case. See *State v. Wasson*, 10th Dist. No. 02AP–211, 2002-Ohio-5963, 2002 WL 31429760, ¶ 29. Although there was no evidence introduced to show appellant's exact speed, there was testimony that appellant was speeding and was traveling "very fast." This is supported by the injuries sustained by Johnson and his grandchildren and the damage done to both vehicles.

{¶ 48} Notably, appellant's speed was only one of several factors for the jury to consider in reaching its decision. See *State v. McCoy*, 4th Dist. No. 02CA12, 2002-Ohio-6305, 2002 WL 31571357, ¶ 12, 14. Among the other factors to be considered was the testimony that appellant had crossed the center line and was driving in the wrong lane of travel. See *State v. Kirkpatrick* (June 22, 1987), 12th Dist. No. CA–87–02–003, 1987 WL 13060 (finding defendant's conduct to be reckless, the court stated that "[a]ppellant was driving left of center for some reason, and if his consumption of alcohol was not the cause and there was no plausible mechanical reason, then appellant's failure to stay in his appropriate lane of travel certainly reflects a blatant disregard for the safety of others which, by itself, would justify the [driver's license] suspension"). See also *Hartman*; *McCoy*; and *State v. Gayheart* (Sep. 8, 1997), 12th Dist. No. CA97–01–001, 1997 WL 563270 (crossing the double yellow line is an act which reflects a blatant disregard for the safety of others and is a reckless act in itself; additionally, the finding of recklessness was also based upon defendant's speed).

{¶ 49} Although this jury was unable to reach a unanimous verdict as to whether or not appellant operated a vehicle while under the influence of alcohol, evidence of appellant's consumption of alcohol was presented and arguably could be considered along with all of the other evidence, as appellant's state of sobriety is probative of whether her operation of her vehicle was reckless.

{¶ 50} Therefore, we find that the testimony and evidence presented, if believed, is sufficient to establish all the essential elements of the crime of vehicular assault, including the element of recklessness.

{¶ 51} We next consider appellant's claim that her convictions are against the manifest weight of the evidence. Based upon our analysis as set forth

above, and in reviewing the entire record, weighing the evidence and all reasonable inferences, and in considering the credibility of the witnesses, as well as resolving all conflicts of evidence, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in finding appellant's conduct to be reckless and in finding appellant guilty. Appellant's convictions need not be reversed nor a new trial ordered, as this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin*, 20 Ohio App.3d at 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 52} Based upon the reasoning set forth above, we reject appellant's challenges and find that her conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Accordingly, we overrule appellant's second assignment of error.

{¶ 53} In her third assignment of error, appellant asserts that she was denied the effective assistance of counsel, based upon counsel's failure to object to the improper jury instruction given by the trial court with respect to the definition of "operation."

{¶ 54} In Ohio, a properly licensed attorney is presumed competent. *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 301, 31 O.O.2d 567, 209 N.E.2d 164. Therefore, the burden of showing ineffective assistance of counsel is on the party asserting it. *State v. Smith* (1985), 17 Ohio St.3d 98, 100, 17 OBR 219, 477 N.E.2d 1128. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. Additionally, in fairly assessing counsel's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101.

{¶ 55} Trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel. Id. A reviewing court must be "highly deferential to counsel's performance and will not second-guess trial strategy decisions." *State v. Tibbetts* (2001), 92 Ohio St.3d 146, 166, 749 N.E.2d 226. Strategic choices made after substantial investigation "will seldom if ever" be found wanting. *Strickland v. Washington* (1984), 466 U.S. 668, 681, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 56} "[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686, 104 S.Ct. 2052, 80 L.Ed.2d 674. In order to succeed on a claim of ineffective assistance of counsel, appellant must satisfy a two-prong test.

First, he must demonstrate that his trial counsel's performance was deficient. Id. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. This requires a showing that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. If he can show deficient performance, he must next demonstrate that he was prejudiced by the deficient performance. Id. To show prejudice, he must establish that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the trial would have been different. A reasonable probability is one sufficient to erode confidence in the outcome. Id. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 57} Even if we find that trial counsel was deficient in failing to object to the jury instruction given for the definition of "operate," appellant has failed to demonstrate that she was prejudiced by this. Based upon our analysis as set forth in our discussion of appellant's first assignment of error, appellant cannot show that there is a reasonable probability that but for trial counsel's unprofessional errors, the result of the trial would have been different. Thus, appellant cannot meet the second prong of the *Strickland* test. Consequently, we overrule appellant's third assignment of error.

{¶ 58} In conclusion, appellant's first, second, and third assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

TYACK, P.J. and McGRATH, J., concur.