(296 P.3d 1133)
No. 106,828

STATE OF KANSAS, *Appellee*, v. DIEONDRA SANCHEZ, *Appellant*.

Opinion filed February 22, 2013.

*Nicholas Means*, of Maughan & Maughan, LC, of Wichita, for appellant.

*David Lowden*, chief attorney, *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., HILL and BRUNS, JJ.

BRUNS, J.: Dieondra Sanchez was charged and convicted of driving under the influence (DUI) and driving with a suspended license. In the early morning, Sanchez, who had been drinking, was riding in the passenger seat of her boyfriend's car. While arguing with her boyfriend, Sanchez grabbed the steering wheel, jerked it to the right, and caused the car to crash into a concrete barrier. She walked away from the accident, but a Highway Patrol trooper found her about a block away. Sanchez consented to the trooper's

request for a blood test, which showed that her blood alcohol concentration was .21. The trooper also discovered that she had a suspended driver's license. Sanchez appeals her convictions, maintaining that she was not driving or operating the car when she grabbed the steering wheel while sitting in the passenger seat. We disagree and affirm her convictions.

## FACTS

On May 1, 2009, at about 1 a.m., Trooper Aaron McGuire responded to an accident on I-135 in Sedgwick County. At the scene of the accident, Trooper McGuire met with Curtis Hines to determine what had happened. Hines said that he and his passenger, who he identified as Sanchez, got into an argument while he was driving. According to Hines, Sanchez grabbed the steering wheel, jerked it to the right, directed the car through crash barrels into a concrete barrier, then got out of the car and walked away. Trooper McGuire performed field sobriety tests on Hines and determined that he was not intoxicated. Hines then voluntarily filled out a statement recounting his version of the events.

Trooper Ryan Barnes arrived at the accident scene to assist Trooper McGuire. Shortly thereafter, Sanchez was located about a block away. She claimed that Hines had cut her, and she requested transport to the hospital. At the hospital, Sanchez alternated from being calm to acting aggressively. She admitted she had been drinking and consented to a blood alcohol test. Test results revealed a blood alcohol concentration of .21, which is over the limit of .08, and she was issued a citation for DUI and driving with a suspended license.

During a bench trial, Hines recanted the version of events that he gave Trooper McGuire at the scene. He testified that he had lied because he was mad at Sanchez. He further testified that neither he nor Sanchez had been drinking the night of the accident. He explained that they got into an argument in the car after he asked Sanchez to return an engagement ring, and when he tried to grab the ring, the car crashed into the concrete barrier.

Sanchez also testified that she had an argument with Hines over the ring and she denied grabbing the steering wheel. Although

Sanchez admitted that she had one glass of wine before the accident, she claimed she drank a bottle of Jack Daniels that she had in her purse as she was walking away from the accident. According to Sanchez, she tossed the bottle somewhere prior to making contact with Trooper Barnes.

The district court determined the testimony of the troopers regarding the version of events to be more credible than that of Hines or Sanchez. It concluded that Sanchez had grabbed the steering wheel from the passenger seat and, as a result, caused the car to crash. The district court also concluded that at the time she grabbed the steering wheel, Sanchez was under the influence of alcohol. Thus, Sanchez was found guilty of DUI and driving with a suspended license.

## ANALYSIS

### Issues Presented

There are three issues presented on appeal. First, whether the district court erred in finding that while riding as a passenger, Sanchez had operated or attempted to operate the car at the time of the accident. Second, whether there was sufficient evidence presented at trial that Sanchez' level of intoxication rendered her incapable of safely operating or attempting to operate a vehicle. Third, whether the district court erred in convicting Sanchez of driving with a suspended license.

### Operating or Attempting to Operate a Motor Vehicle

Interpretation of a statute is a question of law subject to unlimited review. See *State v. Dale*, 293 Kan. 660, 662, 267 P.3d 743 (2011). Determining the intent of the legislature is the fundamental rule of statutory construction. See *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010). When a statute is unambiguous, the plain and ordinary language of the statute is the best evidence of legislative intent. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010).

K.S.A. 2008 Supp. 8-1567(a)(3) states that "[n]o person shall operate or attempt to operate any vehicle within this state while . . . under the influence of alcohol to a degree that renders the

person incapable of safely driving the vehicle." The Kansas Supreme Court has previously determined that "operate" as used in K.S.A. 8-1567 is synonymous with the word "drive." *State v. Kendall*, 274 Kan. 1003, 1009, 58 P.3d 660 (2002). Naturally, one who "operates" or "drives" a vehicle would be the "operator" or "driver" of that vehicle.

The Kansas Legislature defined "driver" in the Uniform Act Regulating Traffic as "every person who drives *or is in actual physical control of a vehicle.*" (Emphasis added.) K.S.A. 8-1416. Because K.S.A. 2008 Supp. 8-1567 is part of the Uniform Act Regulating Traffic, this definition is controlling in this case. See *Kendall*, 274 Kan. at 1009. So we must decide whether Sanchez was "in actual physical control" of the vehicle—as its operator or driver—when she grabbed the steering wheel from the passenger seat and caused the car to crash into a concrete barrier.

The plain meaning of "control" is "to exercise authoritative or dominating influence over; *direct.*" (Emphasis added.) The American Heritage Dictionary 400 (4th ed. 2006). Here, the district court concluded based on the evidence presented at trial that Sanchez physically grabbed the steering wheel and caused the car to hit the concrete barrier. Assuming there was sufficient evidence presented to support the district court's conclusion, we find that Sanchez was in actual physical control of the vehicle—as its operator or driver—at the time of the accident.

Currently, no Kansas case has determined the scope of the phrase "actual physical control of a vehicle" in the context of a passenger. But numerous jurisdictions across the United States have held that a passenger can exert actual physical control over a vehicle by grabbing the steering wheel or by doing other things that cause the vehicle to move. See *State v. Rivera*, 207 Ariz. 69, 74, 83 P.3d 69 (2004) ("[W]e conclude that, a passenger who grabs the steering wheel of a moving car and alters the car's movement has assumed actual physical control for purposes of the DUI statutes."); *In re F.H.*, 192 Cal. App. 4th 1465, 1472, 122 Cal. Rptr. 3d 43 (2011) ("The defendant . . . grabbed the wheel and caused the vehicle to change direction and crash. By that act she . . . made herself the driver as she exercised actual physical control over the

vehicle."); *People v. Yamat*, 475 Mich. 49, 57-58, 714 N.W.2d 335 (2006) ("[D]efendant's act of grabbing the steering wheel and thereby causing the car to veer off the road clearly constitutes 'actual physical control of a motor vehicle.' "); *People v. Cromble-holme*, 8 A.D.3d 1068, 1070, 778 N.Y.S.2d 256 (2004) ("Defendant's action in grabbing the steering wheel [as passenger] and controlling the direction of the vehicle fall within the definition of operation of a motor vehicle."); *City of Valley City v. Berg*, 394 N.W.2d 690, 691 (N.D. 1986) (holding passenger exercised "actual physical control" by starting the vehicle, after which it lurched forward and struck another vehicle); *State v. Wallace*, 166 Ohio App. 3d 845, 849, 853 N.E.2d 704 (2006) ("Wallace's conduct [as passenger] caused movement of the vehicle and the driver's loss of control when she grabbed the steering wheel and caused the vehicle to crash."); *Moe v. MVD*, 133 Or. App. 75, 79, 889 P.2d 1334 (1995) (holding passenger was a "driver" by turning on the ignition and inadvertently putting the car into gear, causing it to move); *Com., Dept. of Transp. v. Hoover*, 161 Pa. Commn. 517, 522, 637 A.2d 721 (1994) ("When a passenger in a vehicle chooses to engage in such foolish conduct as grabbing the steering wheel . . . that person is assuming actual physical control."); *Dugger v. Com.*, 40 Va. App. 586, 594, 580 S.E.2d 477 (2003) ("By forcibly taking the steering over from the driver, appellant manipulated perhaps the most fundamental feature of a moving vehicle—the direction in which it would travel. That deliberate act placed him in actual physical control of the vehicle."); *In re Arambul*, 37 Wash. App. 805, 808, 683 P.2d 1123 (1984) ("[M]omentary grabbing of the steering wheel of a vehicle [by the passenger] comes within the ordinary meaning of the term 'actual physical control.' ").

As the Kansas Supreme Court has recognized, because K.S.A. 2008 Supp. 8-1567 prohibits even the *attempt* to drive or operate a motor vehicle under the influence of alcohol, a violation can occur when an individual does not actually cause the vehicle to move. See *Kendall*, 274 Kan. at 1009-10; *State v. Ahrens*, 296 Kan. 151, Syl. ¶ 4, 290 P.3d 629 (2012); *State v. Suter*, 296 Kan. 137, Syl. ¶¶ 10-12, 290 P.3d 620 (2012). Here, the district court found that Sanchez, riding as a passenger, not only attempted to grab the

steering wheel but actually did so, causing the car to crash. Thus, considering the plain language of K.S.A. 8-1416 and K.S.A. 2008 Supp. 8-1567(a)(3), as well as the authority from other jurisdictions, we conclude that a passenger becomes the driver or operator when he or she grabs the steering wheel and alters the vehicle's movement.

*Sufficiency of Evidence of Driving Under the Influence*

When the sufficiency of the evidence is challenged, this court reviews the evidence in the light most favorable to the prosecution to determine if a rational factfinder could have found the defendant guilty beyond a reasonable doubt. See *State v. Frye*, 294 Kan. 364, 374-75, 277 P.3d 1091 (2012). In conducting this review, we do not reweigh the evidence or the credibility of the witnesses. See *State v. Hall*, 292 Kan. 841, 859, 257 P.3d 272 (2011).

A review of the record reveals that there was sufficient evidence presented at trial from which a reasonable factfinder could conclude that Sanchez' alcohol consumption rendered her "incapable of safely driving [the] vehicle" in violation of K.S.A. 2008 Supp. 8-1567(a)(3). Importantly, circumstantial evidence can support even the gravest offense. See *State v. Ward*, 292 Kan. 541, 581, 256 P.3d 801 (2011).

Here, Hines filled out a voluntary statement immediately following the accident in which he reported that Sanchez grabbed the steering wheel and caused the accident. He further reported that Sanchez walked away from the scene of the accident, and she was found approximately one block away. Because she complained of an injury to her arm, Sanchez was taken to a hospital. At the hospital, Sanchez admitted to Trooper Barnes that she had been drinking at a club prior to the accident.

The results of Sanchez' consensual blood test showed an alcohol concentration of .21, which was over the legal limit of .08. Moreover, Trooper Barnes testified that her breath smelled like alcohol and that she was combative in a way that was consistent with intoxication. Given that all this occurred shortly after the accident, we find that there was sufficient evidence, when viewed in the light most favorable to the State, for the district judge to conclude that

Sanchez had grabbed the steering wheel of the car and caused the accident while under the influence of alcohol in violation of K.S.A. 2008 Supp. 8-1567(a)(3).

Although Hines testified at trial about a version of events that differed from his account at the scene of the accident, we cannot reweigh the evidence or determine the credibility of witnesses. *Hall*, 292 Kan. at 859. Clearly, the district court did not believe this new version of events to be credible.

### Sufficiency of Evidence of Driving with Suspended License

Sanchez raises an identical legal challenge to her conviction for driving with a suspended license. She maintains that from the passenger seat, she was not "driving" the vehicle when she grabbed the wheel and crashed the car into the wall barrier. As before, we disagree.

Again, a statute's plain meaning controls when its language is unambiguous. *Arnett*, 290 Kan. at 47. It is unlawful for any person to drive while his or her license is suspended. K.S.A. 2008 Supp. 8-262(a)(1). And K.S.A. 2008 Supp. 8-234a(b) makes clear that the definition of "driver" set forth in K.S.A. 8-1416 is controlling—a driver is one "who drives or is in actual physical control of a vehicle." Because Sanchez was in actual physical control of the car when she directed it into the wall barrier, she was the "driver" of the vehicle; and she was driving it with a suspended license in violation of K.S.A. 2008 Supp. 8-262(a)(1).

Affirmed.