NOT DESIGNATED FOR PUBLICATION

No. 123,077

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICHARD I. MOLER II,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed December 30, 2021. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., POWELL and CLINE, JJ.

POWELL, J.: Richard I. Moler II was convicted by a jury of his peers of two counts of violating the Kansas Offender Registration Act (KORA), K.S.A. 2020 Supp. 22-4901 et seq. On appeal, Moler raises two principal challenges to his convictions. First, he argues KORA's requirement to register a vehicle did not apply to him because he operated each of the two vehicles in question only once. Second, he argues that because the charging document referred to his prior offense as a conviction and not a juvenile adjudication, and he only stipulated to a prior juvenile adjudication, insufficient evidence supports his convictions for failing to register as an offender. Moler also claims his trial

1

counsel was ineffective, entitling him to a new trial. For reasons we more fully explain below, we reject Moler's contentions and affirm his convictions.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Moler with two counts of failure to register as an offender required by a conviction requiring registration for failing to provide vehicle information when registering on March 19, 2019, and on June 27, 2019.

Before trial, Moler's trial counsel submitted Moler's pro se motion to dismiss and adopted Moler's argument. In the motion, Moler argued KORA does not require registration for a one-time use of a vehicle. The district court denied the motion, finding KORA does require a vehicle's registration even if the vehicle is driven only one time. The district court reasoned that if someone drove a vehicle around the block, people would say the person operated the car; the person would not be required to stop, get out, and then drive again.

At trial, Valley Center Police Officer Erik Leiker testified he saw Moler driving a red Chevrolet Silverado on March 13, 2019. The State introduced a dash cam video of the subsequent stop. Leiker admitted he had not seen Moler driving the red truck before that day or since. The red truck was impounded soon after.

Valley Center Police Officer Erik Nygaard testified at trial he saw Moler drive a Ford Focus on June 22, 2019. This was the only time Nygaard ever saw Moler driving the Focus.

Deputy Seth Lenker, from the Sedgwick County Sheriff's Department's registration unit, began investigating Moler for potential KORA violations in August 2019, after learning Moler had been arrested at the two traffic stops. Lenker testified

2

Moler was supposed to, and did, register in March and June, but Lenker noticed the registration forms did not have any vehicle information.

At trial, Moler stipulated to having been adjudicated in Sedgwick County on January 30, 2007, of an offense requiring registration under KORA.

Moler testified in his own defense. Moler testified that when he registered in March 2019 and June 2019, he notified the registration unit of his arrest for driving on a suspended license. Each time, the person he spoke to asked if he owned the vehicle or operated it regularly. When Moler said no, the person said he was fine. In June, Moler was also asked if it was the same vehicle as in March, and Moler said no.

The jury returned a guilty verdict on both counts.

Moler subsequently filed pro se motions for ineffective assistance of counsel and for a new trial. New counsel was appointed and filed a motion for acquittal or new trial. At a hearing on the posttrial motions, and at the close of evidence and argument, the district court asked whether there was a calculation of the total time Moler had been in custody since the juvenile offense. Neither party had one. The district court rejected Moler's ineffective assistance claim against trial counsel and his regurgitated claim on the meaning of "operate."

On whether Moler was still required to register, the district court refrained from ruling and asked both parties to submit briefs calculating Moler's registration time. Moler calculated his registration requirement had expired based on a 2014 Kansas Bureau of Investigation (KBI) document and a Kansas Adult Supervised Population Electronic Repository (KASPER) printout. The State emailed an Excel spreadsheet calculating the times Moler was incarcerated or noncompliant, showing his registration requirement had not ended. Based on that information, the district court denied the motion.

The district court granted Moler's request for a downward durational departure and sentenced him to 57 months' imprisonment on Count 1 and a concurrent 31-month sentence on Count 2.

Moler timely appeals.

I.     DOES SUFFICIENT EVIDENCE SUPPORT MOLER'S CONVICTIONS?

Moler argues the evidence is insufficient to support his convictions in two ways. First, Moler asserts the district court was wrong to interpret the word "operate" in K.S.A. 2018 Supp. 22-4907(a)(12) to include the single use of a vehicle. Moler posits that "operate" requires the use of a vehicle more than one time. Because K.S.A. 2018 Supp. 22-4907(a)(12) requires the use of a vehicle more than one time and the State only proved he used each vehicle one time, Moler argues, there was insufficient evidence to convict him. Second, Moler argues there was insufficient evidence to support a finding he committed an offense requiring registration. Moler argues that because he was charged with having been convicted, rather than adjudicated as he stipulated to, of an offense requiring registration, there was insufficient evidence to support his convictions.

Despite Moler's convictions, the State makes the argument that Moler somehow lacks standing to make his claims. As to the merits of Moler's arguments, the State argues "operate" encompasses the one-time use of a vehicle, and sufficient evidence establishes Moler had a prior offense requiring registration.

*Standard of Review*

When a criminal defendant challenges the sufficiency of the evidence, our standard of review is "'whether, after reviewing all the evidence in a light most favorable to the prosecution, [we are] convinced a rational factfinder could have found the

4

defendant guilty beyond a reasonable doubt. [We] do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

*Analysis*

"The State must prove each element of an offense. Circumstantial evidence and the logical inferences drawn from that evidence can be sufficient to support a conviction even for the most serious crime. [Citation omitted.]" 307 Kan. at 669. To determine what the State must prove, we look to the relevant statute. *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018).

A. *Because the definition of "operate" includes the one-time use of a vehicle, there was sufficient evidence to support Moler's convictions.*

Moler argues "operate" in K.S.A. 2018 Supp. 22-4907(a)(12) means a vehicle that is regularly driven or driven more than one time. With that understanding, according to Moler, the State failed to prove he drove each vehicle more than once, leaving the evidence insufficient to convict him.

1. *Standing*

The State begins its response by making the surprising argument—given his convictions—that Moler somehow lacks standing to raise his insufficiency of the evidence claim. Standing is a requirement for a case-or-controversy, but it is also a component of subject matter jurisdiction. Standing is a legal question we review de novo. *Gannon v. State*, 298 Kan. 1107, 1122, 319 P.3d 1196 (2014).

"Generally, to have standing, *i.e.*, to have a right to make a legal claim or seek enforcement of a duty or right, a litigant must have a 'sufficient stake in the outcome of an otherwise justiciable controversy in order to obtain judicial resolution of that controversy.' Under the traditional test for standing in Kansas, '"a person must demonstrate that he or she suffered a cognizable injury and that there is a causal connection between the injury and the challenged conduct."' We have also referred to the cognizable injury as an '"injury in fact."' And this court occasionally cites the federal rule's standing elements that 'a party must present an injury that is concrete, particularized, and actual or imminent; the injury must be fairly traceable to the opposing party's challenged action; and the injury must be redressable by a favorable ruling.'

. . . .

"The burden to establish these elements of standing rests with the party asserting it. [Citations omitted.]" 298 Kan. at 1122-23.

The State argues Moler lacks standing because Moler did not, and could not, prove he drove each vehicle only once. The State's standing argument is circular and baseless.

The faults in the State's standing argument are numerous. First, the State's argument is really one on the merits, not standing, because it claims that as Moler cannot prove he drove each vehicle only once, he lacks standing to challenge the conviction on the basis that "operate" means to drive a vehicle more than once. Second, if "operate" in K.S.A. 2018 Supp. 22-4907(a)(12) does require a vehicle to be driven more than once, the State's assertion that Moler never proved he drove the vehicles only one time each inverts the burden of proof in criminal trials. The State has the burden to prove the defendant committed a crime; it is not the defendant's burden to prove a crime did not occur. See *State v. Pabst*, 268 Kan. 501, 511, 996 P.2d 321 (2000).

Finally, Moler meets the basic requirements of standing—he suffered a personal and concrete injury. Moler was convicted of two crimes and sentenced to serve 57 months in prison. That is as cognizable and personal an injury as one can have. Moler has standing to challenge his convictions as being supported by insufficient evidence.

6

## 2. *Statutory Interpretation*

Moler argues there was insufficient evidence to support his conviction because "operate" in K.S.A. 2018 Supp. 22-4907(a)(12) requires a vehicle to be driven regularly, not just one time as the district court ruled. Because "operate" requires regular driving and the State only produced evidence that Moler drove each vehicle one time, Moler asserts there was insufficient evidence to support his two convictions for failure to register as an offender.

Leiker saw Moler driving a Chevrolet Silverado on March 13, 2019, and testified he had not seen Moler driving the truck before or since. Nygaard saw Moler driving a Ford Focus on June 22, 2019, and admitted that was the only time he saw Moler drive the vehicle. Moler admitted to driving each vehicle with a suspended license.

The State presented no evidence Moler drove either vehicle more than once. In fact, Leiker and Nygaard both testified they only saw him drive each vehicle one time. The evidence is clear Moler drove each vehicle one time, but not more than once. Thus, this issue turns on whether "operate" in K.S.A. 2018 Supp. 22-4907(a)(12) requires a vehicle to be driven more than once as Moler argues.

When interpreting a statute, we first attempt to give effect to the intent of the Legislature as expressed through the language of the statute. When the language is plain and unambiguous, we must give effect to the express language, rather than determine what the meaning should or should not be. Put differently, when a statute is plain and unambiguous, we will not speculate as to legislative intent or read the statute to add something not readily found in it. "'[A] clear and unambiguous statute must be given effect as written. If a statute is clear and unambiguous, then there is no need to resort to statutory construction or employ'" canons of construction. *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019). If the language is unclear or ambiguous, then we move

7

from statutory interpretation to statutory construction, going beyond the text in an attempt to determine legislative intent by employing legal canons and examining legislative history and other background considerations. *State v. Keel*, 302 Kan. 560, 572, 357 P.3d 251 (2015).

Moler was charged with failure to register as an offender under K.S.A. 2018 Supp. 22-4907(a)(12) by failing to provide vehicle information for the Chevrolet Silverado when he registered on March 19, 2019, and for failing to provide information for the Ford Focus when he registered again on June 27, 2019. K.S.A. 2018 Supp. 22-4907(a)(12) requires an offender to include on the offender registration form:

> "all vehicle information, including the license plate number, registration number and any other identifier and description of *any vehicle owned or operated by the offender, or any vehicle the offender regularly drives*, either for personal use or in the course of employment, and information concerning the location or locations such vehicle or vehicles are habitually parked or otherwise kept." (Emphasis added.)

Moler did not own either vehicle, and there is no evidence he drove either one more than once.

Research has not revealed a case in which our appellate courts have interpreted "operate" as it is used in K.S.A. 2018 Supp. 22-4907(a)(12). But there are cases interpreting the term "operate" contained in our driving under the influence (DUI) statutes. K.S.A. 2020 Supp. 8-1567(a) defines driving under the influence as "operating or attempting to operate any vehicle within this state . . . ." Our Supreme Court has held that "to operate a vehicle as set forth in [K.S.A.] 8-1567(a) means to drive it" and to convict someone of operating a vehicle under the influence requires "some evidence . . . the defendant drove the vehicle." *State v. Kendall*, 274 Kan. 1003, 1009, 58 P.3d 660 (2002); *State v. Fish*, 228 Kan. 204, 210, 612 P.2d 180 (1980); see also *State v. Sanchez*, 48 Kan. App. 2d 608, 611, 296 P.3d 1133 (2013) ("The Kansas Supreme Court has

8

previously determined that 'operate' as used in K.S.A. 8-1567 is synonymous with the word 'drive.'").

The logic of the definition of "operate" in K.S.A. 2020 Supp. 8-1567(a) readily applies to K.S.A. 2018 Supp. 22-4907(a)(12). Both provisions use "operate" in the context of using a vehicle. Moler does not dispute that to operate a vehicle means to drive it. But he does claim "operate" means to drive "regularly" or more than once. But Moler's definition would be incompatible with K.S.A. 2020 Supp. 8-1567(a), as the statute only requires a person to drive the car one time while under the influence to be guilty of a DUI; it does not require a person to drive the vehicle more than once. Indeed, such an interpretation is nonsensical as it would allow a person to drive under the influence at least once before that person could be charged and convicted of a DUI.

"Operate," as defined in 2020 Supp. K.S.A. 8-1567(a), has no temporal requirement. And there is no context suggesting it has one in K.S.A. 2018 Supp. 22-4907(a)(12). The definition of "operate" supports this reading. In K.S.A. 2018 Supp. 22-4907(a)(12), "operate" affects the word "vehicle" in the provision and acts as a transitive verb. See Webster's New World College Dictionary 1539 (5th ed. 2014) (defining transitive as "having an effect on some person or thing"). As a transitive verb, "operate" means "a) to put or keep in action (a machine, etc.); b) to conduct or direct the affairs of (a business, etc.)." Webster's New World College Dictionary 1025. Here, in speaking of any vehicle operated by the offender, K.S.A. 2018 Supp. 22-4907(a)(12) means putting the vehicle (a machine) into motion (action). As with the Kansas Supreme Court's definition of "operate" in K.S.A. 8-1567(a), there is no requirement for regular use of a vehicle for it to be operated. See *Kendall*, 274 Kan. at 1009; *Fish*, 228 Kan at 210.

Moler argues defining "operate" to mean "driven one time" would render the next part of the statute—"or any vehicle the offender regularly drives"—superfluous. Admittedly, it does raise a question of the need for "regularly drives" if any vehicle

9

driven once must be registered. But Moler's definition presents a greater surplusage problem. If "operate" meant "to drive regularly" as Moler claims, then the language "or any vehicle the offender regularly drives" would be redundant. We presume the Legislature "does not intend to enact superfluous or redundant legislation." *Stanley v. Sullivan*, 300 Kan. 1015, 1021, 336 P.3d 870 (2014).

Contextual clues suggest Moler's definition is incorrect. K.S.A. 2018 Supp. 22-4907(a)(12) separates "any vehicle owned or operated by the offender" and "any vehicle the offender regularly drives" with the disjunctive "or." That "or" gives the option between a vehicle owned or operated and a vehicle regularly driven, evidence that "any vehicle the offender regularly drives" means something different than "operate." If "operate" does not mean "to drive regularly," then it must mean something else. As discussed, caselaw on K.S.A. 2020 Supp. 8-1567(a) and the dictionary provide us an answer. Relying on the plain meaning of "operate" in the context of using a car, "operate" simply means "to drive" without any requirement as to the number of times.

Under K.S.A. 2018 Supp. 22-4907(a)(12), an offender must register the information of any vehicle the offender uses, even if that use is only one time. While Moler argues this would be nearly impossible for an offender to do because an offender is unlikely to have all the requisite information of a car driven only once, it is not for us to pontificate on the wisdom of the statute's requirements. The purpose of KORA is "'to protect the public from sex offenders as a class of criminals who are likely to reoffend.'" *State v. Frederick*, 292 Kan. 169, 173, 251 P.3d 48 (2011). Requiring the offender to register any vehicle the offender owns or operates provides that information to the public, so the public may know that someone driving the registered vehicle may be a sex offender. See K.S.A. 2020 Supp. 22-4909(b)(5).

The State presented sufficient evidence that Moler drove the Chevrolet Silverado and Ford Fusion without registering either. Sufficient evidence supports his convictions.

10

B.    *Moler's stipulation to an adjudication requiring registration is sufficient evidence to support his convictions despite the use of the word "conviction" in the charging document and jury instructions.*

Moler complains he was charged with being required to register as the result of a conviction, but he only stipulated to being required to register as the result of an adjudication. Because of this discrepancy, Moler argues there was insufficient evidence to support his convictions.

Our Supreme Court has stated that in a prosecution for failure to register under KORA, the State must prove two essential elements:  The defendant must fit within the definition of "offender" as defined in KORA, and the failure to register must have occurred during the time period within which the defendant was required to register. *Frederick,* 292 Kan. at 172-73. According to KORA, an "'offender'" includes a "'sex offender,'" which is any person who has been "convicted of any sexually violent crime" or who has been "adjudicated as a juvenile offender for an act which if committed by an adult would constitute the commission of a sexually violent crime . . . ." K.S.A. 2020 Supp. 22-4902(a)(1) (definition of "'[o]ffender'"); K.S.A. 2020 Supp. 22-4902(b)(1)-(2) (definition of "'[s]ex offender'"). A "[s]exually violent crime" includes the crime of aggravated criminal sodomy. K.S.A. 2020 Supp. 22-4902(c)(5).

Here, the State charged Moler with two counts of violating KORA by failing to provide all vehicle information which he was required to do as a registered offender. See K.S.A. 2018 Supp. 22-4903(a); K.S.A. 2018 Supp. 22-4903(c)(1)(B), K.S.A. 2018 Supp. 22-4905(c), and K.S.A. 2018 Supp. 22-4907(a)(12). But the amended information, in alleging the prior offense which made Moler an offender subject to KORA, referred to his prior offense as a conviction instead of an adjudication while at the same time specifically citing to the adjudication. The amended information specifically alleged that Moler's duty to register arose from a "*conviction*, to wit:  Aggravated Criminal Sodomy,

11

on the 30th day of January, 2007, in the 18th Judicial District Court, Juvenile Division, in Case No. 06JV1201." (Emphasis added.)

However, Moler and the State agreed to a stipulation concerning the prior offense which created his duty to register:

"The following facts have been agreed to by the parties and are to be considered by you as true:

"The defendant was adjudicated on January 30th, 2007 in the 18th Judicial District, Sedgwick County, Kansas, of an offense which requires registration as provided in the Kansas Offender Registration Act, and defendant was required to register in Sedgwick County, Kansas during the months of March and June of 2019."

Beyond the stipulation, the State never presented any evidence to the jury about a prior adjudication or conviction requiring Moler to register. Moreover, the elements jury instructions for each count, instructions 4 and 5, also referred to Moler's prior offense as a conviction. Both stated the State had to prove "[t]he defendant had been convicted of a crime which requires registration pursuant to the Kansas Offender Registration Act."

Moler argues, and we agree, that KORA differentiates between convictions and adjudications:

"(b) 'Sex offender' includes any person who:

(1) On or after April 14, 1994, is convicted of any sexually violent crime;

(2) on or after July 1, 2002, is adjudicated as a juvenile offender for an act which if committed by an adult would constitute the commission of a sexually violent crime, unless the court, on the record, finds that the act involved non-forcible sexual conduct, the victim was at least 14 years of age and the offender was not more than four years older than the victim." K.S.A. 2018 Supp. 22-4902(b)(1)-(2).

12

KORA also provides different registration requirements for adult convictions and juvenile adjudications. See K.S.A. 2018 Supp. 22-4906.

Caselaw in Kansas has repeatedly recognized KORA's distinction between adult convictions and juvenile adjudications. See *Frederick*, 292 Kan. at 174 ("This court has consistently held that the legislature knows the difference between an adult conviction and a juvenile adjudication, and that when legislation refers only to convictions, it does not include adjudications."); *State v. Reese*, 42 Kan. App. 2d 388, 389, 212 P.3d 260 (2009) ("The Kansas Offender Registration Act, K.S.A. 22-4901 *et seq.*, is certainly one of these statutes in which the legislature demonstrated its ability to distinguish between convictions and adjudications. The statute contains a separate plan for the registration of juveniles.").

Because he stipulated to a juvenile adjudication and not a conviction, Moler argues his stipulation was insufficient evidence to convict him. The State replies it is a distinction without a difference:  that Moler was required to register is the important fact. Because Moler stipulated to committing a prior offense which created his duty to register, the State argues Moler cannot now challenge that fact. We agree with the State.

"'The purpose of a complaint or information is to inform the accused of the particular offense or offenses with which the defendant is charged and which the defendant must defend against at time of trial.'" *State v. Martens*, 274 Kan. 459, 469, 54 P.3d 960 (2002). Moreover, "'an information should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied.' [Citation omitted.]" *State v. Chrichton*, 13 Kan. App. 2d 213, 215, 766 P.2d 832 (1988).

Here, it cannot be argued that Moler was not put on notice by the State as to what prior offense created his duty to register. It is specifically stated in the amended

information. In fact, Moler does not raise any complaints about defects in the amended information, and Moler never challenged at trial his duty to register. Instead, he stipulated to it, probably to avoid putting the specifics of that prior offense before the jury. Whether Moler's prior offense is referred to as a conviction or adjudication is unimportant in this context. What is important is that the State put Moler on notice that his prior offense of aggravated criminal sodomy created his duty to register.

However, Moler argues the charging document "sets the outer limits of the conviction or convictions that can result." *State v. Fitzgerald*, 308 Kan. 659, 666, 423 P.3d 497 (2018). Relying on *State v. Laborde,* 303 Kan 1, 360 P.3d 1080 (2015), Moler argues that because the charging document referred to the prior offense creating his duty to register as a conviction and not an adjudication, and he stipulated only to a prior juvenile adjudication, the State was required to prove a prior conviction to establish his duty to register.

In *Laborde,* the defendant challenged the sufficiency of the evidence against her. The State charged Laborde with theft by deception, but the parties tried the case, and the jury was instructed, on theft by unauthorized control. Our Supreme Court held that because Laborde had been charged with theft by deception, not theft by unauthorized control, and because the elements were different, insufficient evidence supported a conviction for theft by deception because there was no evidence the property was transferred in reliance on a false statement. 303 Kan. at 6-7.

The central holding in *Laborde* is that the defendant must be convicted of the crime charged, not the one tried, and for that reason it is distinguishable. The key question in this case is whether the trial proceedings allowed Moler to be convicted of crimes different from those charged. See *State v. Nesbitt*, No. 121,647, 2021 WL 3124049, at *4 (Kan. App. 2021) (unpublished opinion); *State v. Garner*, No. 102,790, 2012 WL 4794448, at *16 (Kan. App. 2012) (unpublished opinion) (defendant convicted

14

of crime charged despite broader language in jury instruction because charging document language included within instruction).

Here, the elements of the crimes charged were not changed by the way the case was tried. The State had to prove Moler was an offender and that he had a duty to register at the times in question. What Moler challenges is simply the labeling of the prior offense giving rise to his duty to register. A common-sense reading of the charging document tells us that in this instance the difference is immaterial because the information specifically listed the prior offense. While the charging document sets the limits on what a specific defendant can be convicted of, there are still circumstances where a conviction will be upheld, even when the charging document was incorrect. See generally K.S.A. 22-3201(b) ("Error in the citation or its omission shall be not ground for dismissal of the complaint, information or indictment or for reversal of a conviction if the error or omission did not prejudice the defendant.").

Moreover, when a defendant enters into a stipulation of facts, the defendant is precluded from disputing the factual evidence in the stipulation. *State v. Bogguess*, 293 Kan. 743, 745, 268 P.3d 481 (2012). Moler stipulated to the fact that he committed a prior offense of aggravated criminal sodomy. Moler's factual stipulation created the inescapable legal conclusion that Moler met the definition of "offender" in KORA and, therefore, had a duty to register. Any error in the charging document or in the jury instructions referring to Moler's prior offense as a conviction instead of an adjudication is harmless error because such error did not affect the outcome of the case. Sufficient evidence supports Moler's convictions for two counts of failing to register as an offender.

II.    WAS MOLER'S TRIAL COUNSEL INEFFECTIVE?

Moler also argues his trial counsel was ineffective for stipulating to Moler's registration requirement when the State could not have proven a registration requirement

15

existed at trial. Moler argues trial counsel failed to investigate the fact that Moler was no longer required to register and the State's inability to prove that at trial was highly prejudicial. Moler also asserts the district court erred in not making a factual finding whether he was required to register in 2019 because that was the heart of his motion for a new trial and ineffective assistance of counsel claim.

The State responds that trial counsel was not ineffective because the discovery showed Moler's original five-year registration period was still active. Additionally, at the request of the district court, the State provided a calculation based on Moler's periods of incarceration and noncompliance showing Moler retained a duty to register.

*Standard of Review*

A district court "may grant a new trial to the defendant if required in the interest of justice." K.S.A. 2020 Supp. 22-3501(1). We review the district court's decision on a motion for new trial for abuse of discretion. Discretion is abused if the decision is (1) arbitrary, fanciful, or unreasonable; (2) based on a legal error; or (3) based on a factual error. *State v. Butler*, 307 Kan. 831, 852, 416 P.3d 116 (2018).

A defendant can challenge the effectiveness of counsel in a motion for new trial. *State v. Coones*, 301 Kan. 64, 68, 339 P.3d 375 (2014). Ineffective assistance of counsel involves mixed questions of law and fact, and we review the district court's factual findings for substantial competent evidence and legal conclusions de novo. 301 Kan. at 69. When a defendant raises an ineffective assistance of counsel claim within a motion for new trial, we apply the standards articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Coones*, 301 Kan. at 69-70.

16

*Analysis*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to assistance of counsel in all prosecutions, a right that applies to state proceedings through the Fourteenth Amendment to the United States Constitution. That right requires "'reasonably effective assistance' of counsel." *Butler*, 307 Kan. at 852.

There is a two-step test for ineffective assistance of counsel claims.

> "'The first prong . . . requires a defendant to show that counsel's representation fell below an objective standard of reasonableness . . . . Judicial scrutiny of counsel's performance must be highly deferential [with] every effort . . . made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. We must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance. [Citation omitted.]'" 307 Kan. at 852-53.

Under the second prong, the defendant must establish prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the result of the proceeding would have been different. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Butler*, 307 Kan. at 853.

Moler claims his trial counsel's strategic decision to stipulate to his registration requirement was based on trial counsel's failure to investigate whether Moler was still required to register. Moler argues this failure to investigate is not a reasonable exercise of professional judgment. Despite Moler's assertion in his brief, trial counsel did not stipulate that Moler was required to register. Moler did. While trial counsel recommended the stipulation to Moler, Moler had to waive his right to a jury trial on that element of the charged crimes and agree to the stipulation.

17

Strategic and tactical decisions are within the province of a lawyer, not the defendant. *Butler*, 307 Kan. at 853-54.

> "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.' [Citations omitted.]" 307 Kan. at 854.

But "counsel's alleged strategic decisions are [not] insulated from review" when counsel performs an insufficient investigation and lacks the information necessary to make an informed decision. 307 Kan. at 854. Moler bears the burden to demonstrate trial counsel's alleged deficiencies did not result from strategy. See 307 Kan. at 854.

At the June 4, 2020 hearing on Moler's motion for judgment of acquittal or in the alternative motion for new trial, trial counsel testified he received full discovery and considered whether Moler was still required to register. Contained in the evidence from the State was a letter from the KBI dated July 29, 2019, after the charged offenses here, informing Moler that his registration had not been satisfied because of periods of incarceration and noncompliance, and a KBI letter from February 14, 2014, stating the same. Trial counsel testified that he consulted KASPER and confirmed Moler had several convictions and time in custody during his registration period, which tolled the time and did not count toward his registration requirement.

Given the evidence trial counsel received during discovery, his strategic decision to recommend Moler stipulate to the registration requirement was reasonable. Trial

counsel investigated Moler's registration status and believed Moler was still required to register. Based on his investigation and the discovery received, trial counsel's performance was reasonable. Moler fails to persuade us that his trial counsel's performance was deficient.

But even if we assumed deficient performance by Moler's trial counsel, Moler still cannot show prejudice. At the hearing on the motion for a new trial, the State and Moler's new counsel could not tell the district court exactly how many days Moler had spent in compliance with his registration requirement. The district court denied most of the motion but held off ruling on Moler's claim that his registration requirement was over, asking the parties to submit calculations on his registration period. Moler claims the State never submitted any calculation. At a June 24, 2020 hearing, the district court stated both parties had provided what it asked for. The State provided an addition to the appellate record containing an email and spreadsheet sent to the district court and Moler's counsel, detailing its calculation showing Moler still was required to register. The district court denied the motion.

Moler claims that if his registration requirement had gone to trial, the State would not have been able to put on evidence that he was still required to register. The State's response to the district court's request shows it likely did have the requisite evidence. As a result, we are unpersuaded by Moler that there is a reasonable probability the outcome of the trial would have been different if his trial counsel had not recommended he stipulate to being required to register. Moler's trial counsel was not ineffective.

CONCLUSION

We hold that KORA requires an offender to register a vehicle even if it is driven by the offender only once. We also hold that any error in the charging document or jury instructions referring to Moler's prior juvenile adjudication of aggravated criminal

19

sodomy, the offense which created Moler's duty to register, as a conviction was harmless error because the amended information specifically listed the prior offense creating Moler's duty to register and Moler stipulated to this prior offense. A common-sense reading of the amended information shows that Moler was put on notice of the charges against him, and the reference to "conviction" rather than "adjudication" did not alter the elements needed to be proven by the State to find Moler guilty of the crimes charged. We also find that Moler's counsel was not ineffective in recommending that Moler stipulate to his registration requirement.

Affirmed.

* * *

MALONE, J., concurring in part and dissenting in part: I agree with the majority's resolution of all issues in this appeal except for Richard I. Moller II's statutory interpretation claim that he was not required by law to register vehicles that he drove only one time. Because the evidence is undisputed that Moler did not own or regularly drive either vehicle, he did not have to include information about the vehicles on the registration form and there was insufficient evidence to convict him of violating the Kansas Offender Registration Act (KORA), K.S.A. 2020 Supp. 22-4901 et seq.

Moler was charged with a KORA violation for failing to provide information required under K.S.A. 2018 Supp. 22-4907(a)(12) for the Chevrolet Silverado when he registered on March 19, 2019, and for failing to provide information for the Ford Focus when he registered again on June 27, 2019. K.S.A. 2018 Supp. 22-4907(a)(12) requires an offender to include on the offender registration form:

> "all vehicle information, including the license plate number, registration number and any other identifier and description of *any vehicle owned or operated by the offender, or any vehicle the offender regularly drives*, either for personal use or in the course of

20

employment, and information concerning the location or locations such vehicle or vehicles are habitually parked or otherwise kept." (Emphasis added.)

Moler did not own or regularly drive either vehicle. Based on the evidence, he can be convicted of failing to provide the information required under K.S.A. 2018 Supp. 22-4907(a)(12) only if the term "operated" includes vehicles that he drove one time.

As the State points out, K.S.A. 2020 Supp. 8-1567(a) defines driving under the influence as "operating or attempting to operate any vehicle within this state . . . ." Our Supreme Court has held that "to operate a vehicle as set forth in [K.S.A.] 8-1567(a) means to drive it" and to convict someone of operating a vehicle under the influence requires "some evidence . . . the defendant drove the vehicle." *State v. Kendall*, 274 Kan. 1003, 1009, 58 P.3d 660 (2002). If a court construes the term "operate" under K.S.A. 22-4907(a)(12) the same way that it construes the term under K.S.A. 8-1567(a), then Moler is guilty of the KORA violations even though he only drove each vehicle one time. But there is no reason for a court to construe the term the same way under both statutes.

I agree with Moler's argument that defining "operate" under K.S.A. 2018 Supp. 22-4907(a)(12) to include driving a vehicle one time would render the next part of the statute—"or any vehicle the offender regularly drives"—superfluous. The grammatical structure of the statutory language supports Moler's assertion. K.S.A. 2018 Supp. 22-4907(a)(12) requires an offender to provide information on "any vehicle owned or operated by the offender" or "any vehicle the offender regularly drives." There is one comma separating these two clauses. In this context, the term "operated" is grouped with the term "owned" and separated from the term "regularly drives." The most reasonable interpretation of the statute is that an offender must provide information for any vehicle the offender owns or regularly drives. Granted, this interpretation means the term "operated" is redundant to the term "owned." But there would have been no reason for the Legislature to have included the "regularly drives" language in the statute if driving a car

21

just one time requires registration. There is some redundancy under either interpretation of the statute, but the State's interpretation adds a clause that serves no purpose.

Statutes should be interpreted *in pari materia*, with an "attempt to harmonize all the parts of an act to the greatest extent possible." *State v. Brown*, 303 Kan. 995, 1006, 368 P.3d 1101 (2016). As Moler points out, K.S.A. 2018 Supp. 22-4907(a)(6) requires an offender to report any temporary lodging information, but only for "any place in which the offender is staying for seven or more days." Suppose an offender spends one night at a friend's house and borrows the friend's car one time to run an errand. It would make little sense to interpret the applicable statutory provisions in such a way to require the offender to report information about the car the offender used one time even though the offender need not report information about the friend's address. KORA protects the public from certain offenders the Legislature has determined are likely to reoffend. *State v. Stoll*, 312 Kan. 726, 729, 480 P.3d 158 (2021) (citing *State v. Frederick*, 292 Kan. 169, 173, 251 P.3d 48 [2011]). Requiring an offender to report information about a vehicle the offender uses one time does little to protect the public. In fact, it associates the vehicle with an offender even though the offender may never drive it again. Registration only protects the public when it learns about vehicles the offender owns or regularly drives.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. "'Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history . . . to construe the legislature's intent.' [Citation omitted.]" *State v. Pulliam*, 308 Kan. 1354, 1364, 430 P.3d 39 (2018).

Although K.S.A. 2018 Supp. 22-4907(a)(12) is not a model of clarity, I do not find the statute to be ambiguous. But even if the statutory language could be considered

22

ambiguous, i.e., subject to more than one reasonable meaning, then the rule of lenity requires the statute to be strictly construed in favor of the accused. *State v. Gensler*, 308 Kan. 674, 680, 423 P.3d 488 (2018). Thus, whether Moler's plain reading of the statute is correct or whether he gets the benefit of the rule of lenity, I agree with his claim that he was not required by law to register vehicles that he drove only one time. As a result, I would reverse Moler's convictions for the KORA violations because there was insufficient evidence to support the convictions.